1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  AMANDA J. MURRAY, State Bar No. 223829
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5741
    Fax:  (415) 703-5843
8
   Attorneys for Respondent
9  SF2007403447

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15  In re                              NO. C 07-04246 JSW

16  **FRANK McCORMICK,**               **ANSWER TO PETITION FOR WRIT
                                         OF HABEAS CORPUS;**
17                     Petitioner,      **MEMORANDUM OF POINTS AND
                                         AUTHORITIES**
18  **On Habeas Corpus.**

19                                      Judge:      The Honorable Jeffrey S.
                                                    White
20

21        As an Answer to the Petition for Writ of Habeas Corpus filed by California state inmate

22  Frank McCormick, proceeding pro se in this habeas corpus action, Respondent Warden Ben

23  Curry admits, denies, and alleges as follows:

24        1.    McCormick is in the lawful custody of the California Department of Corrections and

25  Rehabilitation serving a life sentence following his 1983 conviction in Monterey County for

26  second degree murder and assault with a deadly weapon.  (Ex. A, Abstract of Judgement.)

27        2.    McCormick's Petition does not challenge his conviction; instead, he challenges

28  the Board of Parole Hearings' November 14, 2005 decision finding him unsuitable for parole.

1

1  Specifically, he alleges that his federal due process rights were violated because there is no

2  evidence to support the Board's decision. (*See generally* Pet.)

3      3.    On August 8, 1983, McCormick and his co-criminal Alfred Johnson Jr., approached a

4  car occupied by Stephen Edwards and Alvin Brooks. (Ex. B, Subsequent Parole Consideration

5  Hearing at 66: Ex. C, Probation Officer's Report at 2-5; Ex. D, Life Prisoner Evaluation Report,

6  April 2005, at 1-2.) Johnson and Edwards began arguing and McCormick pulled out a gun,

7  which he pointed at Brooks. (*Id.*) As the argument between the men intensified, a shot was fired

8  and Edwards was shot in the heart with a bullet from McCormick's gun. (*Id.*) Edwards died

9  moments later and McCormick and Johnson fled to McCormick's residence. (*Id.*)

10     3.    On November 14, 2005, McCormick was provided an opportunity to be heard during

11  his parole consideration hearing (Ex. B at 17-64), and the Board issued a decision explaining

12  why he was found unsuitable for parole. *Greenholtz v. Inmates of the Nebraska Penal and*

13  *Correctional Complex*, 442 U.S. 1 (1979) (opportunity to be heard and decision only clearly

14  established United States Supreme Court law regarding the federal due process rights of inmates

15  at parole consideration hearings); (Ex. B at 65-71). In denying parole, the Board found that the

16  commitment offense was carried out in a cruel and callous manner, in that McCormick shot an

17  unarmed man at close range, piercing his aorta and killing him almost immediately. (*Id.* at 65.)

18  The Board noted:  that the motive for the crime was trivial given that the murder was committed

19  based on an argument between two other individuals; that there was a potential for other victims

20  because Brooks was also in the car when Edwards was shot; and that McCormick did nothing to

21  help Edwards — rather he fled the scene. (*Id.* at 65-67.) The Board also indicated that

22  McCormick's disciplinary-free period was insufficient to prove to the Board that he would not

23  pose an unreasonable risk of safety to society if released from prison. (*Id.* at 69, 71.) Finally, the

24  Board ordered a new psychological evaluation to clarify McCormick's potential for violence if

25  released, evaluate the significance of alcohol as it related to McCormick's commitment offense,

26  including his ability to refrain from using alcohol upon release, and explore whether McCormick

27  had come to terms with the underlying cause(s) of the commitment offense. (*Id.* at 70.)

28     4.    McCormick filed a petition with the Monterey County Superior Court raising

Answer and Supporting Memorandum of Points and Authorities

1   substantially the same challenges to the Board's 2005 decision that he asserts in his federal

2   Petition.  The superior court denied McCormick's petition on October 6, 2006 in a four-paged

3   reasoned decision.  (Ex. E, Superior Court Pet. & Denial.)[1/]  The court determined that there was

4   some evidence supporting the Board's conclusion that McCormick's commitment offense was

5   carried out in a cruel in callous manner because McCormick shot Edwards at close range while

6   he was seated in a parked car.  (Ex. E at 2.)  The court also noted that the Board found that

7   McCormick failed to render any assistance to Edwards after shooting him, that there has a

8   potential for additional victims, and that the motive for the crime was trivial because it was

9   committed as a result of an argument that did not involve McCormick.  (*Id.*)  In addition to the

10  commitment offense, the court found that there was some evidence supporting the Board's

11  decision to deny parole based on:  (1) McCormick's disciplinary history and the Board's need to

12  ensure McCormick is able to follow the "rules of society" on parole; and (2) the Board's request

13  for additional psychological evidence regarding McCormick's commitment offense and his

14  potential for danger if released from prison.  (*Id.* at 2-3.)  Finally, the court noted that the Board's

15  parole denial was not based solely on the nature of the commitment offense (or any immutable

16  factors) but that the Board's determination relied in part on requesting additional information to

17  ensure that McCormick would no longer pose an unreasonable risk of safety to society before

18  granting his release.  (*Id.* at 3.)

19      5.   McCormick pursued his claims by filing substantially the same petition for writ of

20  habeas corpus in California's Sixth Appellate District, which was denied on January 12, 2007.

21  (Ex. F, Appellate Court Pet. & Denial.)

22      6.   McCormick pursued his claims by filing substantially the same petition for writ of

23  habeas corpus in the California Supreme Court, which was denied on April 11, 2007. (Ex. G,

24  Supreme Court Pet. & Denial.)

25      7.   Respondent admits that McCormick has exhausted his state court remedies regarding

26

27      1. To avoid repetition and unnecessary volume, the exhibits attached to McCormick's state
    court petitions have been removed.  Respondent will provide these documents upon the Court's
28  request.

1   his allegations challenging the sufficiency of the evidence used by the Board to find him

2   currently unsuitable for parole.  Respondent denies that Agrio has exhausted his claims to the

3   extent that they are more broadly interpreted to encompass any systematic issues beyond this

4   particular review of parole denial.

5       8.   Respondent denies that the state courts' adjudication of McCormick's claims was

6   contrary to, or involved an unreasonable application of, clearly established federal law as

7   determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).

8       9.   Respondent denies the state courts' adjudication of McCormick's claims was based on

9   an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d)(2).

10      10.  To preserve the issue, Respondent denies that McCormick has a federal liberty interest

11   in parole under California Penal Code section 3041, notwithstanding the Ninth Circuit's contrary

12   decision in *Sass v. Cal. Bd. Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2005). *See Greenholtz*

13   *v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional

14   parole release date created by unique structure and language of state parole statute); *In re*

15   *Dannenberg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process

16   that does not impose a mandatory duty to grant life inmates parole before a suitability finding);

17   *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest in parole because serving

18   a contemplated sentence does not create an atypical or significant hardship compared with

19   ordinary prison life).  Thus, McCormick fails to assert a basis for federal jurisdiction.

20      11.  To preserve the issue, notwithstanding the Ninth Circuit's contrary decision in *Irons v.*

21   *Carey*, 505 F.3d 846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever

22   clearly established that a state parole board's decision must be supported by some evidence.

23      12.  Respondent affirmatively alleges that if the some-evidence standard applies to federal

24   review of parole denials, there was some evidence supporting the Board's 2005 decision to deny

25   McCormick parole.

26      13.  Respondent alleges that there is no clearly established federal law precluding the

27   Board's reliance on McCormick's commitment offense as a reason to deny him parole.  *Carey v.*

28   *Musladin*, __ U.S. __, 127 S. Ct. 649, 654 (2006) (United States Supreme Court emphasized that

1  under AEDPA, only Supreme Court holdings regarding the specific issue presented may be used

2  to overturn valid state court decisions).

3       14.  Respondent denies that the Board's decision denying parole violated McCormick's

4  federal due process rights.

5       15.  If the petition is granted, McCormick's remedy is limited to a new parole consideration

6  hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295

7  F.3d 977, 984-985 (9th Cir. 2002); *In re Rosenkrantz*, 29 Cal.4th 616, 658 (2002).

8       16.  Respondent admits that McCormick's claim is timely under 28 U.S.C. § 2244(d)(1),

9  and that the petition is not barred by the non-retroactivity doctrine.

10      17.  Except as expressly admitted in this Answer, Respondent denies the allegations of the

11  Petition.

12      18.  McCormick fails to state or establish any grounds for habeas corpus relief.

13      For the reasons stated in this Answer and in the following Memorandum of Points and

14  Authorities, the Court should deny the Petition.

15             **MEMORANDUM OF POINTS AND AUTHORITIES**

16                      **INTRODUCTION**

17      McCormick's Petition should be denied because he received the only process due under

18  clearly established Supreme Court authority: the opportunity to be heard and a decision.  Thus,

19  the Board's decision did not violate his federal due process rights.  Finally, if the some evidence

20  test is applicable, and Respondent maintains it is not, McCormick's Petition should be denied

21  because there is some evidence supporting the Board's decision denying McCormick parole.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

Answer and Supporting Memorandum of Points and Authorities

1

**ARGUMENT**

2
**THE STATE COURTS' ADJUDICATION OF MCCORMICK'S CLAIMS WAS**
**NEITHER CONTRARY TO, NOR INVOLVED AN UNREASONABLE**
3
**APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR WAS**
**IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

4

    **A.**   **The Standard of Review for Federal Habeas Petitions Brought**
5
        **by State Prisoners Is Highly Deferential to the State-Courts'**
        **Rulings.**

6

7
    Federal habeas relief for state prisoners was tightly constrained under the "highly deferential

8
standard for evaluating state-court rulings" imposed by Antiterrorism and Effective Death

9
Penalty Act of 1996 (AEDPA). *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

10
Under AEDPA, a state prisoner's federal habeas petition must be denied unless the state court's

11
adjudication was contrary to, or involved an unreasonable application of, clearly established

12
Federal law, as determined by the Supreme Court of the United States; or was based on an

13
unreasonable determination of the facts in light of the evidence presented in the State court

14
proceeding. 28 U.S.C. § 2254(d).

15
    Under AEDPA, a state court decision is " contrary to" clearly established Supreme Court

16
precedent "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

17
cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of

18
the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8

19
(2002) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). "What matters are the

20
holdings of the Supreme Court, not the holdings of lower federal courts." *Plumlee v. Masto*, ___

21
F.3d ___, 2008 WL 151273 (9th Cir. Jan. 17, 2008) (en banc).[2]

22
    Under the "unreasonable application" clause of § 2254(d) (1), a federal habeas court may

23
grant the writ if the state court identifies the correct governing legal principle from the Supreme

24
Court's decisions, but unreasonably applies that principle to the facts of the case. *Williams*, 529

25
U.S. at 413. A federal habeas court may not grant the writ "simply because that court concludes

26
in its independent judgment that the relevant state-court decision applied clearly established

27

28
    2. A copy of this recent decision is attached as Exhibit 11. Local Rule 5-133(i).

Answer and Supporting Memorandum of Points and Authorities

1   federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

2   at 412; *see also Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (it is "not enough that a federal

3   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

4   the state court was 'erroneous.').

5        The federal court looks to the last reasoned state court decision as the basis for the state

6   court judgment. *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir. 2002); *see Ylst v. Nunnemaker*, 501

7   U.S. 797, 803-04 (1991).

8   **B.    McCormick's Petition Should Be Denied Because He Received All
             Process Due:  an Opportunity to Be Heard and an Explanation for the
9            Parole Denial.**

10       The Supreme Court has found that a parole board's procedures are constitutionally adequate

11  if the inmate is given an opportunity to be heard and a decision informing him of the reasons he

12  did not qualify for parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, supra, 442

13  U.S. at 16. As a matter of "clearly established" federal law, a challenge to a parole decision will

14  fail if the inmate has received the protections required under *Greenholtz. See Maynard v.*

15  *Cartwright,* 486 U.S. 356, 361-62 (1988).[3/]  McCormick does not deny that he received an

16  opportunity to be heard or the reasons he was denied parole. (Ex. B.) Thus, the state courts did

17  not unreasonably apply clearly established federal law when they denied McCormick's habeas

18  petitions.

19  **C.    The Some-Evidence Standard of Review Is Not Clearly Established Federal
             Law by the United States Supreme Court for Challenging Parole Denials.**

20

21       The some-evidence standard does not apply in federal habeas proceedings challenging

22  parole denials because it is not clearly established federal law. The United States Supreme Court

23  has reiterated that for AEDPA purposes, "clearly established federal law" refers only to the

24  holdings of the nation's highest court on the specific issue presented. *Carey v. Musladin,* __

25  _____

26       3. The Supreme Court cited *Greenholtz* approvingly for the proposition that the "level of
    process due for inmates being considered for release on parole includes opportunity to be heard and
27  notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its] discussion
    of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005).
28

1  U.S. __, 127 S. Ct. at 653. In *Musladin*, a convicted murderer filed a federal habeas petition after

2  a state appellate court upheld the victim's family members' wearing of buttons with the victim's

3  photograph during the trial, concluding that it was not inherently or actually prejudicial based on

4  two United State Supreme Court cases. *Id*. at 651-52. The Court of Appeals for the Ninth

5  Circuit reversed, finding that the state court's decision was contrary to, or involved an

6  unreasonable application of, clearly established federal law – the prejudice test in the two United

7  State Supreme Court cases. *Id*. at 652. In vacating the Ninth Circuit's decision, the Supreme

8  Court stated that the cases relied on by the Ninth Circuit involved state-sponsored courtroom

9  practices – making a defendant wear prison clothing during trial and seating four uniformed

10  troopers behind a defendant during trial – that were unlike the private action of the victim's

11  family members' wearing of buttons. *Id*. at 653-54. The *Musladin* Court further noted that the

12  two cases were not clearly established federal law on the issue because the United States

13  Supreme Court "has never addressed a claim that such private-actor courtroom conduct was so

14  inherently prejudicial that it deprived a defendant of a fair trial." *Id*. at 653. Consequently, the

15  Court held that the Ninth Circuit erred by importing a federal test for prejudice state action in a

16  courtroom to private spectators' courtroom conduct. *Id*. at 654.

17      Again, in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), the United States

18  Supreme Court factually distinguished two of its cases that the Ninth Circuit cited in holding that

19  the state court unreasonably applied clearly established federal law when finding ineffective

20  assistance of counsel claims frivolous. In *Landrigan*, a criminal defendant questioned by the

21  judge told the court that he did not want mitigating evidence presented (his attorney advised

22  otherwise). *Id*. at 1937-38. The United States Supreme Court reasoned that the two cases relied

23  on by the Ninth Circuit were not clearly established federal law by factually distinguishing them.

24  *See id*. at 1942. The Court noted that one case involved an attorney's failure to provide

25  mitigating evidence and the other case concerned a defendant who refused to help develop

26  mitigating evidence. *Id*. *See also Wright v. Van Patten*, ___ U.S. ___, 128 S.Ct. 743, 746 (2008)

27  (United States Supreme Court reversed the Seventh Circuit and upheld a state appellate court

28  determination that the defendant's right to counsel was not violated when defense counsel

8

1    appeared by speaker phone at a hearing because Supreme Court precedents did not clearly hold

2    that counsel's participation by speaker phone amounted to complete denial of counsel, the

3    equivalent to total absence. Accordingly, the Court concluded that the state appellate court's

4    determination was not contrary to, or an unreasonable application of, clearly established federal

5    law, as required to grant federal habeas relief).

6         Likewise, several recent Ninth Circuit decisions also emphasize that there can be no clearly

7    established federal law where the Supreme Court has never addressed a particular issue or

8    applied a certain test to a specific type of proceeding. For instance, in *Foote v. Del Papa*, 492

9    F.3d 1026 (9th Cir. 2007) the Ninth Circuit affirmed the district court's denial of a petition

10   alleging ineffective assistance of appellate counsel based on an alleged conflict of interest

11   because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth

12   Amendment. *Id.* at *3-4. Similarly, in *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007), the

13   Ninth Circuit upheld the state court's decision – finding that *Wainwright v. Greenfield*, 474 U.S.

14   284 (1986) did not apply to a state court competency hearing – because the Supreme Court has

15   not held that *Wainwright* applied to competency hearings and thus, was not contrary to clearly

16   established federal law. *Id.* at 718, 727. Finally, in *Locke v. Cattell*, 476 F.3d 46 (9th Cir. 2007),

17   the Ninth Circuit affirmed the denial of a federal habeas petition based on a proposed violation of

18   *Miranda v. Arizona*, 384 U.S. 436 (1966) concluding that, because no Supreme Court case

19   supported petitioner's claim that his admission to a crime transformed a police interview into a

20   custodial interrogation, the state court's decision denying relief was not unreasonable under

21   AEDPA. *Cattell*, 476 F.3d at 53.

22        Accordingly, because *Superintendent v. Hill*, *supra*, 472 U.S. at 455-56 applied the some-

23   evidence standard to a prison disciplinary hearing and McCormick challenges his 2005 parole

24   consideration hearing, the some-evidence standard does not apply. Because *Greenholtz* is the

25   *only* United States Supreme Court authority describing the process due at a parole consideration

26   hearing when an inmate has a federal liberty interest in parole, the *Greenholtz* test, not the some-

27   evidence standard, should apply in this proceeding. Regardless, Respondent recognizes that the

28   Ninth Circuit has held otherwise, most recently in *Irons v. Carey*, *supra*, 505 F.3d 846, and will

1   argue this case accordingly.

2        **D.    McCormick's Petition Should Be Denied Because There Is Some Evidence
    Supporting the Board's Decision and — As Required by AEDPA — the State
3   Court Decision Upholding the Board's Parole Denial Based on a Reasonable
    Application of the Facts in Light of the Evidence Presented.**

4

5        Assuming McCormick has a federally protected liberty interest in parole, and if the

6   "minimally stringent" some-evidence standard applies, then the requirements of due process are

7   satisfied if there is "any evidence in the record that could support the conclusion reached by the

8   board." *See Hill*, 472 U.S. at 455-56 (applying some-evidence standard to prison disciplinary

9   hearing). The some-evidence standard "does not require examination of the entire record,

10  independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it

11  assures that "the record is not so devoid of evidence that the findings of the . . . board were

12  without support or otherwise arbitrary." *Id.* at 457. Thus, both the "reasonable application"

13  standard of AEDPA and the some-evidence standard of *Hill* are very minimal standards.

14       Although McCormick invites the Court to re-examine the facts of his case and re-weigh

15  the evidence presented to the Board, neither AEDPA nor Hill's some-evidence test permit this

16  degree of judicial intrusion. McCormick bears the burden of proving that the state court's factual

17  determinations were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Hill*, 472 U.S. at 457;

18  *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005).

19       Moreover, in assessing the state court's review of McCormick's claims, not only should

20  the appropriate deference be afforded under AEDPA to the state court's review, but deference is

21  also due to the underlying Board decision. The Supreme Court has recognized the difficult and

22  sensitive task faced by the Board members in evaluating the advisability of parole release.

23  *Greenholtz*, 442 U.S. at 9-10. Thus, contrary to McCormick's belief that he should be paroled

24  based on the evidence in support of parole presented at the hearing (*see generally*, Petn.), the

25  Supreme Court has stated that in parole release, there is no set of facts which, if shown, mandate

26  a decision favorable to the inmate. *Id.* Instead, under the some-evidence standard, the court's

27  inquiry is limited solely to determining whether the state court properly found that the Board's

28  decision to deny parole is supported by some evidence in the record, *i.e.*, any evidence. *Hill*, 472

Answer and Supporting Memorandum of Points and Authorities

1  U.S. at 455.

2      In this case, the Monterey County Superior Court concluded that there was some evidence

3  supporting the Board's decision denying McCormick parole based on the cruel and callous nature

4  of the commitment offense, in that McCormick shot Edwards at close range while he was seated

5  in a parked car.  (Ex. B at 65; Ex. C at 2-5; Ex. D at 1-2; Ex. E at 2.)  The court also noted that

6  the Board found that McCormick failed to render any assistance to Edwards after he shot him and

7  that the motive for the crime was trivial because it was committed as a result of an argument that

8  did not involve McCormick.  (Ex. B at 65-66; Ex. E at 2.)  In addition to the commitment

9  offense, the court found that there was some evidence supporting the Board's decision to deny

10 parole based on: (1) McCormick's disciplinary history and the Board's need to ensure

11 McCormick is able to follow the "rules of society" on parole; and (2) the Board's request for

12 additional psychological evidence regarding McCormick's commitment offense and potential

13 danger to society if released from prison.  (Ex. B at 69-71; Ex. E at 2-3.)  Finally, the court noted

14 that the Board's denial of parole was not based solely on the nature of the commitment offense,

15 but that the Board's determination relied in part on requiring additional information to ensure

16 that McCormick would no longer pose an unreasonable risk of safety to society before finding

17 him suitable for parole.  (*Id.* at 3.)

18     Thus, if the some evidence test applies, the state court denials were not an unreasonable

19 application of clearly established United States Supreme Court law, nor did the state courts

20 unreasonably determine the facts.  Instead, the state court properly determined that there is some

21 evidence in the record supporting the Board's decision, and McCormick's Petition should be

22 denied.

23     **E.    No Clearly Established United States Supreme Court Law Precludes the
           State Courts from Upholding the Board's Reliance on McCormick's**

24     **Commitment Offense to Deny Him Parole.**

25     McCormick contends that the Board violated his federal due process rights by relying on

26 immutable factors — the nature of the offense and pre-conviction factors — to find him

27 unsuitable for parole.  (Petn. at 6.)  Yet, there is no clearly established federal law as determined

28 by the United States Supreme Court that precluded the Board's reliance on McCormick's crime

11

1    as a reason to find him unsuitable for parole.[4] *Musladin*, 127 S. Ct. at 654; *Landrigan*, 127 S.

2    Ct. at 1942. Although the Ninth Circuit's recent holdings suggest that continued reliance on the

3    commitment offense may violate due process at some future date (*see, e.g., Irons,* 505 F.3d at

4    854 (citing *Biggs v. Terhune,* 334 F.3d. 910, 916-17 (9th Cir. 2003); *Hayward v. Marshall* (9th

5    Cir. 2007) __ F.3d ___, 2008 WL 43716 at *8, fn. 10 (court concluded that Governor's continued

6    reliance on Hayward's commitment offense violated due process, but expressly limited its

7    holding to the facts of Hayward's case and the nature of his specific conviction offense)), these

8    holdings are irrelevant when conducting an AEDPA analysis. *Plumlee, supra,* ___ F.3d ___,

9    2008 WL 151273 at *6 ("What matters are the holdings of the Supreme Court, not the holdings

10   of lower federal courts").

11            Indeed, the Supreme Court recently highlighted the tight constraints imposed by AEDPA:

12            Because our cases give no clear answer to the question presented, let alone one in
              [Petitioner's] favor, "it cannot be said that the state court 'unreasonabl[y]
13            appli[ed] clearly established Federal law.'" *Musladin,* 549 U.S. at ___, 127 S. Ct.
              649, 654 (quoting 28 U.S.C. § 2254(d)(1)). Under the explicit terms of §
14            2254(d)(1), therefore, relief is unauthorized.

15   *Van Patten*, 2008 WL 59980, *4. Thus, because the Board's reliance on McCormick's

16   commitment offense to deny parole is supported by California state law (Cal. Pen. Code, §3041;

17   *Dannenberg*, 34 Cal.4th 1061, 1094 (2005)) and such reliance is not contrary to any clearly

18   established United States Supreme Court law, McCormick's argument is without merit.

19   //

20   //

21   //

22   //

23   //

24   //

25

26

27
              4. Other than the commitment offense, there is no evidence that the Board relied on any pre-
28   conviction factors in denying McCormick parole. (Ex. B.)

Answer and Supporting Memorandum of Points and Authorities

## CONCLUSION

McCormick received all the process he was due under clearly established Supreme Court authority. Moreover, the record reflects that the Board's decision was supported by some evidence. Thus, the state courts' adjudication of McCormick's claims was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. Accordingly, McCormick's Petition should be denied.

Dated: February 7, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

AMANDA J. MURRAY
Deputy Attorney General

Attorneys for Respondent

40213389.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **McCormick v. Curry**

No.:    **C 07-04246 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **February 7, 2008**, I served the attached

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Frank McCormick, C-78307**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **February 7, 2008**, at San Francisco, California.

| | |
|---|---|
| M.M. Argarin | _M.M. Argarin_ |
| Declarant | Signature |

40215896.wpd