# EXHIBIT B

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS


In the matter of the Life )
Term Parole Consideration )
Hearing of:              )         CDC Number C-78307
                         )
FRANK MCCORMICK          )
                         )
_____)


CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

NOVEMBER 14, 2005

4:10 P.M.


PANEL PRESENT:

Ms. Margarita Perez, Presiding Commissioner
Ms. Sandra Bryson, Commissioner
Mr. Jay Nielsen, Deputy Commissioner



OTHERS PRESENT:

Mr. Frank McCormick, Inmate
Ms. Pat Fox, Attorney for Inmate
Correctional Officers Unidentified




CORRECTIONS TO THE DECISION HAVE BEEN MADE

          _____ No      See Review of Hearing
          _____ Yes     Transcript Memorandum



**Stacy Wegner, Peters Shorthand Reporting**

ii

<u>INDEX</u>

<u>PAGE</u>

Proceedings......................................... 1

Case Factors....................................... 17

Pre-Commitment Factors............................. 28

Post-Commitment Factors............................ 55

Parole Plans....................................... 37

Closing Statements................................. 61

Recess............................................. 64

Decision........................................... 65

Adjournment........................................ 71

Transcriber Certification.......................... 72

--oOo--

1

1           <u>P R O C E E D I N G S</u>

2           **PRESIDING COMMISSIONER PEREZ:**   Good

3    afternoon, sir.

4           **INMATE MCCORMICK:**   Good afternoon.

5           **PRESIDING COMMISSIONER PEREZ:**   This is a

6    subsequent parole consideration hearing for

7    Frank McCormick, M-C-C-O-R-M-I-C-K, CDC C-78307.

8    Today's date is November 14th, 2005.  We are

9    located at the Correctional Training Facility in

10   Soledad.  The time is 4:10 p.m.  Sir, according

11   to the record you were received by the

12   department on December 22, 1983 -- excuse me,

13   December 22nd, 1983.  Your life term began on

14   September 25th, 1984 out of the county of

15   Monterey for the offense of murder second

16   degree, Penal Code Section 187.  Case number

17   MCR4898, count one, for which you were

18   subsequently assessed a term of 17 years to life

19   with a minimum eligible parole date of May 14th,

20   1993.  Sir, the record reflects that you were

21   convicted of another -- of a non-controlling

22   offense, that would be assault with a deadly

23   weapon to run concurrent with the life term.

24   Penal Code Section 12022.5 out of Monterey, same

25   case number, count two.  Sir, this hearing is

26   being tape recorded, and for the purposes of

27   voice identification, we're going to go around

2

1  the room and ask everyone to identify

2  themselves, stating their first name, last name,

3  spelling their last name.  When we get to you,

4  sir, I'd like you to provide us with your CDC

5  number.  I will start with myself and go to my

6  left.  My name is Margarita Perez, P-E-R-E-Z,

7  Commissioner with the Board of Parole Hearings.

8       **COMMISSIONER BRYSON:**  Sandra Bryson, B-R-Y-

9  S-O-N, Commissioner with Board of Parole

10  Hearings.

11       **DEPUTY COMMISSIONER NIELSEN:**  Jay Nielsen,

12  N-I-E-L-S-E-N, Deputy Commissioner, Board of

13  Parole Hearings.

14       **ATTORNEY FOX:**  Pat Fox, F-O-X, attorney for

15  Mr. McCormick.

16       **INMATE MCCORMICK:**  Frank A. McCormick, M-C-

17  C-O-R-M-I-C-K, C-78307.

18       **PRESIDING COMMISSIONER PEREZ:**  Thank you,

19  sir.  I do note for the record that we have two

20  correctional officers in the room.  They will

21  not be participating in today's hearing.  They

22  are here for the purposes of security.  Sir,

23  before we begin there's a white document taped

24  to the table in front of you.  Would you read

25  that out loud for me please.

26       **INMATE MCCORMICK:**

27              ADA American's with Disabilities

3

```
 1              Act.  The American's with
 2              Disabilities Act, ADA, is a law to
 3              help people with disabilities.
 4              Disabilities are problems that make
 5              it harder for some people to see,
 6              hear, breathe, talk, walk, learn,
 7              think, work, or take care of
 8              themselves than it is for others.
 9              Nobody can be kept out of public
10              places or activities because of a
11              disability.  If you have a
12              disability, you have the right to
13              ask for help to get ready for the
14              BPT hearing, get to the hearing,
15              talk, read forms and papers and
16              understand the hearing process.
17              BPT will look at what you ask for
18              to make sure that you a disability
19              that is covered by the ADA and that
20              you have asked for the right kind
21              of help.  If you do not get help,
22              or if you don't think you got the
23              kind of help you need, ask for a
24              BPT 1074 grievance form.  You can
25              also get help to fill it out.
26         PRESIDING COMMISSIONER PEREZ:  Thank you,
27    sir.  You didn't realize you were going to be
```

4

1  given a reading exam when you came in here

2  today.

3      **INMATE MCCORMICK:**  Not really.

4      **PRESIDING COMMISSIONER PEREZ:**  Sir, did you

5  understand what that meant?

6      **INMATE MCCORMICK:**  Yes, I did.

7      **PRESIDING COMMISSIONER PEREZ:**  Can you tell

8  me what that means in your own words, please?

9      **INMATE MCCORMICK:**  Well, if I got any

10  problem that are covered by ADA, that I can get

11  any kind of help that I need.

12      **PRESIDING COMMISSIONER PEREZ:**  Exactly.

13      **INMATE MCCORMICK:**  Right.

14      **PRESIDING COMMISSIONER PEREZ:**  Exactly,

15  sir.  And I do note for the record on December

16  17th, 2004, you signed a BPT 1073, which is the

17  request for a reasonable accommodation form in

18  which you indicated you have no disabilities.

19  Is that correct, sir?

20      **INMATE MCCORMICK:**  That's correct.

21      **PRESIDING COMMISSIONER PEREZ:**  And I notice

22  you are wearing glasses?

23      **INMATE MCCORMICK:**  They're seeing glasses.

24      **PRESIDING COMMISSIONER PEREZ:**  They're for

25  close and distance?

26      **INMATE MCCORMICK:**  Right.

27      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

5

1  good.  Sir, are you hearing-impaired?

2      **INMATE MCCORMICK:**  No.

3      **PRESIDING COMMISSIONER PEREZ:**  Are you

4  currently on any medication?

5      **INMATE MCCORMICK:**  Just for diabetes and

6  hypertension.

7      **PRESIDING COMMISSIONER PEREZ:**  Will the

8  side effects of those medications make it

9  difficult for you to participate in today's

10  hearing?

11      **INMATE MCCORMICK:**  No, it shouldn't.

12      **PRESIDING COMMISSIONER PEREZ:**  Are you

13  currently or have you ever been on psychotropic

14  medications?

15      **INMATE MCCORMICK:**  No.

16      **PRESIDING COMMISSIONER PEREZ:**  Are you

17  familiar with the CCCMS or EOP programs?

18      **INMATE MCCORMICK:**  Yes, I am.

19      **PRESIDING COMMISSIONER PEREZ:**  Can you tell

20  me what they are, sir?

21      **INMATE MCCORMICK:**  Well, the only thing I

22  know about them is that they got people running

23  around here looking way crazy.

24      **PRESIDING COMMISSIONER PEREZ:**  Have you

25  ever been a participant in any of those

26  programs?

27      **INMATE MCCORMICK:**  No.  I just had to deal

6

1  with them when I was a clerk over at North.

2      **PRESIDING COMMISSIONER PEREZ**:  Okay.  Very

3  good, sir.  Sir, are you a high school graduate?

4      **INMATE MCCORMICK**:  Yes, I am.

5      **PRESIDING COMMISSIONER PEREZ**:  And what

6  year did you graduate?

7      **INMATE MCCORMICK**:  I graduated in '69.

8      **PRESIDING COMMISSIONER PEREZ**:  And how did

9  you do in school?

10      **INMATE MCCORMICK**:  I did B average.

11      **PRESIDING COMMISSIONER PEREZ**:  B average.

12  Do you have any college in your background?

13      **INMATE MCCORMICK**:  I've got a year and a

14  half.

15      **PRESIDING COMMISSIONER PEREZ**:  And what

16  courses did you take in college?

17      **INMATE MCCORMICK**:  Psych 101, 102, history,

18  and I took architectural drawing.

19      **PRESIDING COMMISSIONER PEREZ**:  Okay.  Very

20  good, sir.  Counsel, have all ADA issues been

21  addressed to the best of your knowledge?

22      **ATTORNEY FOX**:  Yes, they have, as to this

23  hearing.

24      **PRESIDING COMMISSIONER PEREZ**:  Okay.

25  Great.  Sir, this hearing is being conducted

26  pursuant to Penal Code Section 3041 and 3042 and

27  the rules and regulations of the Board of Parole

7

1   Hearings governing parole consideration hearings

2   for life inmates.  If during today's hearing

3   we're talking a little fast, or if you have

4   difficulty understanding something that I'm

5   trying to convey, or any of us are trying to

6   convey, I want you to let us know right away.

7   At that point we'll stop, we'll back up, we'll

8   slow down, we'll make sure that you understand

9   before we proceed.  Do you understand sir?

10        **INMATE MCCORMICK:**  Yes.

11        **PRESIDING COMMISSIONER PEREZ:**  Can I get

12  one of those packets.  Thank you.  Sir, the

13  purpose of today's hearing is to -- once again,

14  is to consider your suitability for parole.  In

15  doing so, we will consider the number and nature

16  of the crimes you were committed for, your prior

17  criminal and social history, as well as your

18  behavior and programming since your arrival

19  within the California Department of Corrections

20  and Rehabilitation.  The Commissioner and myself

21  have had the opportunity to review your record,

22  and during today's hearing, sir, you will have

23  the opportunity to correct or clarify that

24  record.  Okay.

25        **INMATE MCCORMICK:**  All right.

26        **PRESIDING COMMISSIONER PEREZ:**  We will

27  reach a decision today and inform you of that

8

1  decision.  If we do find you suitable for

2  parole, we will explain the length of your

3  confinement to you.  Okay.

4       **INMATE MCCORMICK:**  All right.

5       **PRESIDING COMMISSIONER PEREZ:**  Before we

6  recess for deliberations your attorney and you

7  will have the opportunity to make a closing

8  statement.  Your statement should be limited to

9  why you feel you are suitable for parole.  We

10  will then recess, clear the room, and

11  deliberate.  Once we've concluded our

12  deliberations, we will resume the hearing and

13  announce our decision.  Sir, the California Code

14  of Regulations states that regardless of time

15  served, a life inmate shall be found unsuitable

16  for and denied parole, if in the opinion of the

17  Panel, the inmate would pose an unreasonable

18  risk of danger to society.  Do you understand

19  that, sir?

20       **INMATE MCCORMICK:**  Yes.

21       **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

22  good, sir.  Sir, during today's hearing you have

23  certain rights.  You have a right to a timely

24  notice of this hearing.  You have the right to

25  present relevant documents, and you have the

26  right to review your Central File.  I do note

27  for the record that on December 17th, 2004, you

9

1 were provided the opportunity to review your

2 Central File.  Is that correct, sir?

3      **INMATE MCCORMICK:**  Yes, it is.

4      **PRESIDING COMMISSIONER PEREZ:**  Did you, in

5 fact, review it?

6      **INMATE MCCORMICK:**  Yes.

7      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

8 good.  Counsel, have all your client's rights

9 been met to the best of your knowledge?

10      **ATTORNEY FOX:**  Well, I have one question.

11 Let's see, my understanding is that there was an

12 investigation that was requested by the Panel on

13 his last hearing.

14      **DEPUTY COMMISSIONER NIELSEN:**  I was just

15 searching for that information, and I did not

16 find the investigation completed.

17      **ATTORNEY FOX:**  All right.

18      **DEPUTY COMMISSIONER NIELSEN:**  This was

19 requested -- the investigation establishes a

20 threat to family members' safety if inmate

21 McCormick is granted parole.  Also please

22 request police reports for the life offense, and

23 I went over to the file of boxes.  I did not

24 find this investigation completed.

25      **ATTORNEY FOX:**  What I saw regarding that

26 was that the first communication took place in

27 September, this year, and the last document I

10

 1  saw was indicated the 4th of October of this
 2  year, and that I think that was communication
 3  between the BPH and their investigation staff.
 4  Construction of having read what is in the file
 5  is that the local law enforcement's concern was
 6  that the family members retaliation against Mr.
 7  McCormick, not any threat by Mr. McCormick to
 8  the family, not withstanding a letter in the
 9  file from the victim's mother, so I'm not sure
10  if it would be fair to go forward with that
11  status still hanging open.
12      **PRESIDING COMMISSIONER PEREZ:**  Let me ask
13  you a question.  How is the -- this
14  investigation relevant to today's hearing?
15      **ATTORNEY FOX:**  It's relevant in that it
16  could be a factor the Panel considers in denying
17  parole, simply because law enforcement says we
18  don't want him out here.  We're afraid there
19  will be more criminal activity related to him,
20  not committed by him, but related to him.  So I
21  don't know, is my answer.
22      **PRESIDING COMMISSIONER PEREZ:**  That concern
23  would not be -- I don't see how that issue plays
24  into whether or not Mr. McCormick is suitable
25  for parole.  We are here to establish whether or
26  not he is suitable for parole.  If there is
27  concern by someone else that there might be

11

 1  criminal activity or some harm to him if he's

 2  granted parole, I don't see how that plays into

 3  whether or not this Panel determines whether or

 4  not he's suitable for parole or not.

 5      **ATTORNEY FOX:**  All right.

 6      **PRESIDING COMMISSIONER PEREZ:**  Maybe you

 7  can clarify that for me.  Quite frankly, based

 8  on my understanding, and perhaps I'm not

 9  understanding it correctly, I'm not sure that

10  would be fair to Mr. McCormick.  Maybe I'm

11  missing something.

12      **ATTORNEY FOX:**  My concern is there's this

13  open investigation that has not been resolved.

14      **PRESIDING COMMISSIONER PEREZ:**  But is it

15  relevant to this decision?

16      **ATTORNEY FOX:**  I would say so.

17      **PRESIDING COMMISSIONER PEREZ:**  Whether or

18  not he is suitable for parole?

19      **ATTORNEY FOX:**  Because it was important to

20  the Panel last time.

21      **PRESIDING COMMISSIONER PEREZ:**  Okay.

22      **ATTORNEY FOX:**  So it --

23      **PRESIDING COMMISSIONER PEREZ:**  Mr. Nielsen.

24      **DEPUTY COMMISSIONER NIELSEN:**  I would only

25  -- if the opposition of law enforcement is

26  predicated singularly on the assumption that he

27  is a threat to family "members" or Mr.

12

1  McCormick, then I have stuff to talk about it.

2      **PRESIDING COMMISSIONER PEREZ:**  No, I don't

3  --

4      **DEPUTY COMMISSIONER NIELSEN:**  Now, that's

5  not the way I read it.

6      **PRESIDING COMMISSIONER PEREZ:**  Let me ask

7  you this.  This particular request for

8  investigation says "see attached letters."  Is

9  it letters from Mr. McCormick, which alleged to

10  be threatening other individuals?  What do those

11  documents contain?  I don't see them in my

12  packet.

13      **ATTORNEY FOX:**  They could be -- perhaps be

14  in the confidential part of the file --

15      **DEPUTY COMMISSIONER NIELSEN:**  No.

16      **ATTORNEY FOX:**  -- which I don't have access

17  to.

18      **DEPUTY COMMISSIONER NIELSEN:**  All we have

19  is, no -- excuse me.

20      **ATTORNEY FOX:**  So apologize, I don't know.

21      **DEPUTY COMMISSIONER NIELSEN:**  I will double

22  check, but --

23      **PRESIDING COMMISSIONER PEREZ:**  Mr.

24  McCormick, can you shed any light on this

25  discussion?

26      **ATTORNEY FOX:**  What I have is a letter from

27  the Seaside Police Department, which should be

13

1  in the file, dated March 18th, 2004.

2      **PRESIDING COMMISSIONER PEREZ:**  I have no

3  such letter in my file.

4      **DEPUTY COMMISSIONER NIELSEN:**  There's one

5  in the Central File.

6      **PRESIDING COMMISSIONER PEREZ:**  Let me --

7  let the chair take a look at the Central File.

8      **PRESIDING COMMISSIONER PEREZ:**  Let's go off

9  record for a little while.  Actually, let me

10  have Mr. McCormick step out for a moment.  Okay.

11      **PRESIDING COMMISSIONER PEREZ:**  We are back

12  on record.  Based on a review of the Central

13  File and the letter from the Seaside Police

14  Department, it does not appear that there is any

15  information or evidence in that particular

16  document which would indicate that -- it appears

17  to be speculation on the part of the Seaside

18  Police Department based on information that they

19  have in regards to this particular case.  And

20  after reviewing that particular document, I

21  don't see how it has any relevancy to Mr.

22  McCormick's suitability for parole.  We're here

23  to establish whether or not he is suitable for

24  parole.  There is nothing in that particular

25  document that is adverse to Mr. McCormick, and

26  as such, we will proceed forth with this

27  hearing.  Mr. Nielsen?

14

1       **DEPUTY COMMISSIONER NIELSEN:**  I would
2  concur with that evaluation.  Do not review --
3  view that but as speculation that we the Board
4  would not weight in anything.  The opposition
5  can stand on itself.  That specific reason,
6  therefore, would not -- nor would I construe the
7  investigation, as we've discussed it off the
8  record, as adverse to your client in any event.
9       **PRESIDING COMMISSIONER PEREZ:**  I agree.
10  Okay.
11       **ATTORNEY FOX:**  Thank you.
12       **PRESIDING COMMISSIONER PEREZ:**  Thank you.
13  Counsel, have all your client's rights been met
14  to the best of your knowledge?
15       **ATTORNEY FOX:**  Yes, as to this hearing.
16       **PRESIDING COMMISSIONER PEREZ:**  Very good,
17  thank you.  Sir, you have an additional right,
18  and that is the right to be heard by an
19  impartial Panel.  Do you have any objections to
20  today's Panel?
21       **INMATE MCCORMICK:**  No.
22       **PRESIDING COMMISSIONER PEREZ:**  Counsel, do
23  you have any objection to today's Panel?
24       **ATTORNEY FOX:**  No, I do not.
25       **PRESIDING COMMISSIONER PEREZ:**  Okay.  Thank
26  you.  Sir, you will receive a copy of our
27  written tentative decision today.  That decision

15

1  becomes affective within 120 days.  In the

2  future you will receive a copy of the decision,

3  as well as a copy of today's transcript.  Okay?

4      **INMATE MCCORMICK:**  Yes.

5      **PRESIDING COMMISSIONER PEREZ:**  The Board

6  has eliminated its appeals process.  So what

7  that means in today's hearing is, if you

8  disagree with anything that occurs during

9  today's hearing, you can go directly to the

10  courts with your complaint.  Okay.

11      **INMATE MCCORMICK:**  All right.

12      **PRESIDING COMMISSIONER PEREZ:**  Sir, during

13  today's hearing you are not required to discuss

14  the offense, nor are you required to admit to

15  the offense.  However, it's important for you to

16  understand that this Panel does accept true the

17  findings of the Court.  We are not here to retry

18  your case.  We are here simply to determine

19  whether or not you are suitable for parole.

20  Okay.

21      **INMATE MCCORMICK:**  All right.

22      **PRESIDING COMMISSIONER PEREZ:**  Commissioner

23  Nielsen, is there confidential information and

24  will we be utilizing it?

25      **DEPUTY COMMISSIONER NIELSEN:**  There is

26  confidential information related to the crime

27  partner, but it will not be relevant to today's

16

1  proceeding.

2     **PRESIDING COMMISSIONER PEREZ:**  Thank you.

3  Sir, I have passed a checklist marked Exhibit

4  One to your counsel to ensure that we are all

5  operating off the same documents, and at this

6  time I would ask her to verify the accuracy of

7  the document.

8     **ATTORNEY FOX:**  Yes, and I've made one

9  little change reflecting that I did receive the

10  addendum.

11     **PRESIDING COMMISSIONER PEREZ:**  Very good.

12  And we received a copy of that as well.  Thank

13  you.

14     **ATTORNEY FOX:**  Thank you.

15     **PRESIDING COMMISSIONER PEREZ:**  Counsel, do

16  you have any additional documents to submit to

17  this Panel today?

18     **ATTORNEY FOX:**  Yes.  We have some letters

19  to offer regarding parole plans.  Okay.  We have

20  four letters.

21     **PRESIDING COMMISSIONER PEREZ:**  Okay.

22     **ATTORNEY FOX:**  Thank you.

23     **PRESIDING COMMISSIONER PEREZ:**  Thank you.

24  Counsel, do you have any preliminary objections?

25     **ATTORNEY FOX:**  No.  I just one regarding

26  some documents that were just handed to me this

27  afternoon, and let's see, someone -- a laudatory

17

1  chrono, which I will not object to, but there is

2  a letter dated November 11th that was submitted

3  by the District Attorney's office, and we object

4  to that under the 10 day rule.

5      **PRESIDING COMMISSIONER PEREZ:**  You're

6  objection is granted.

7      **ATTORNEY FOX:**  Thank you.

8      **PRESIDING COMMISSIONER PEREZ:**  Any other

9  objections counsel?

10     **ATTORNEY FOX:**  No.  I think that is enough.

11     **PRESIDING COMMISSIONER PEREZ:**  Will your

12  client be speaking with us?

13     **ATTORNEY FOX:**  Yes.

14     **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

15  good.  Before we begin, I need to swear you in.

16  Do you solemnly swear or affirm that the

17  testimony you are about to give at this hearing

18  will be the truth, the whole truth, and nothing

19  but the truth?

20     **INMATE MCCORMICK:**  Yes.

21     **PRESIDING COMMISSIONER PEREZ:**  Thank you,

22  sir.  Sir, I'd like to start out by

23  incorporating into the record specific

24  information as it relates to the commitment

25  offense.  I will read into the record the

26  summary of the crime as outlined on the April

27  2005 counselor's report prepared by correctional

18

1  counselor one M Rubio, R-U-B-I-O, and the record
2  states that.

3                    The murder victim Stephen Edwards
4                    was killed by McCormick in the
5                    parking lot of the Seasider Club on
6                    August 8th, 1983, at approximately
7                    11:00 p.m.  The cause of death was
8                    a gunshot wound to the heart.  An
9                    investigation leading up led police
10                   to information indicating that
11                   Frank McCormick and Alfred Johnson
12                   Jr. went to the Seasider parking
13                   lot.  Johnson approached the
14                   passenger side of the auto occupied
15                   by Stephen Edwards and Alvin
16                   Brooks.  McCormick approached the
17                   driver's side.  A verbal dispute
18                   erupted between Johnson and
19                   Edwards.  McCormick pulled out a
20                   handgun, which he pointed at
21                   Brooks.  The dispute between
22                   Edwards and Johnson grew heated, a
23                   shot was fired, and Edwards was
24                   struck with a bullet from
25                   McCormick's weapon.  McCormick and
26                   Johnson fled the scene in an auto
27                   later traced to McCormick's

19

1                residence.

2          This information was obtained on Page Two

3     of the Probation Officer's Report.  Sir, did you

4     commit in offense?

5          **INMATE MCCORMICK:**  Yes, I did.

6          **PRESIDING COMMISSIONER PEREZ:**  Can you

7     explain to me the circumstances -- I did read

8     your version of this, and I'm having difficulty

9     understanding the relationship between yourself,

10    your crime partner, and the two individuals.

11         **INMATE MCCORMICK:**  Well, Johnson was my

12    cousin's fiancé.

13         **PRESIDING COMMISSIONER PEREZ:**  Okay.

14         **INMATE MCCORMICK:**  All right.  Brooks, I

15    used to go with his sister back in sixth grade.

16    That was my girlfriend, and I hadn't seen them

17    in years.

18         **PRESIDING COMMISSIONER PEREZ:**  Okay.

19         **INMATE MCCORMICK:**  Because I moved out of

20    the area.  As far as Mr. Edwards, just in

21    passing.  That's the only thing I knew about

22    him.

23         **PRESIDING COMMISSIONER PEREZ:**  Okay.  Can

24    you tell me what happened on this date?

25         **INMATE MCCORMICK:**  Well, I found out later

26    that him and Johnson had had an argument a few

27    days before this.

20

1      **PRESIDING COMMISSIONER PEREZ:**  Okay.

2      **INMATE MCCORMICK:**  So when we went down to

3  the club, Bub asked me to watch his back while

4  he went to talk to him and squash the whole

5  situation.  When I get over there, he's got a

6  knife, and Alfred takes the knife from him.

7      **PRESIDING COMMISSIONER PEREZ:**  Who's got a

8  knife?

9      **INMATE MCCORMICK:**  Edwards.

10      **PRESIDING COMMISSIONER PEREZ:**  Edwards.

11  Okay.

12      **INMATE MCCORMICK:**  Yeah.  Then he goes

13  under the seats, and says, "I'll blow both you

14  MFs away."

15      **PRESIDING COMMISSIONER PEREZ:**  So you went

16  from the club to the car?

17      **INMATE MCCORMICK:**  Right.  But we never got

18  in the club.  We were parked right in front of

19  the door.

20      **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

21  you were just in front of the club.  Okay.  And

22  then what happened?

23      **INMATE MCCORMICK:**  Well, Bub went across --

24  that's what I call Johnson, that's his nickname,

25  Bubba.  He went across the parking lot, which is

26  about 10 feet from where we were parked at.

27      **PRESIDING COMMISSIONER PEREZ:**  Uh-huh.

21

1      **INMATE MCCORMICK:**  To talk too Steve.  When

2  we gets there, you know, they start hassling

3  between the doors, so I go over and I take

4  Brooks out of the car, tell him to get out of

5  the car, tell him to get of the way.  Leave it

6  alone, right.  That's when he goes under the

7  seat, Johnson --

8      **PRESIDING COMMISSIONER PEREZ:**  Edwards?

9      **INMATE MCCORMICK:**  Edwards.

10      **PRESIDING COMMISSIONER PEREZ:**  And says,

11  "I'll blow both you mother fuckers away," and --

12      **PRESIDING COMMISSIONER PEREZ:**  Then what

13  happened?

14      **INMATE MCCORMICK:**  That's when I shot him.

15      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Why

16  did you have a weapon, sir?

17      **INMATE MCCORMICK:**  Just bad habit.  I

18  always carried one.

19      **PRESIDING COMMISSIONER PEREZ:**  Where did

20  you get a weapon?

21      **INMATE MCCORMICK:**  I bought it from Hogans

22  Department, not department store, but gun shop

23  up in Walnut Creek.

24      **PRESIDING COMMISSIONER PEREZ:**  Was the

25  weapon registered?

26      **INMATE MCCORMICK:**  Yes.

27      **PRESIDING COMMISSIONER PEREZ:**  Why did you

22

1  in a habit of carrying a weapon?

2      **INMATE MCCORMICK:**  Well, I grew up in the

3  Bay Area.

4      **PRESIDING COMMISSIONER PEREZ:**  So everybody

5  in the Bay Area carries a weapon, sir?

6      **INMATE MCCORMICK:**  Pretty much, at that

7  time, yes.  You could be going to the grocery

8  store and end up a victim.

9      **PRESIDING COMMISSIONER PEREZ:**  Did you have

10  a concealed weapon's permit?

11      **INMATE MCCORMICK:**  No, I didn't.

12      **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

13  you said Edwards pulled out a weapon?

14      **INMATE MCCORMICK:**  He was reaching out of

15  the seat, pulling something out.  I never saw

16  exactly what it was.

17      **PRESIDING COMMISSIONER PEREZ:**  So we don't

18  know if he pulled --

19      **INMATE MCCORMICK:**  No, we don't.

20      **PRESIDING COMMISSIONER PEREZ:**  -- a hot dog

21  or a gun --

22      **INMATE MCCORMICK:**  A gun.

23      **PRESIDING COMMISSIONER PEREZ:**  -- out from

24  under that seat?

25      **INMATE MCCORMICK:**  No.

26      **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

27  then when he did that, then you pulled out your

23

1  loaded weapon and you pointed and you shot and
2  killed him?
3      **INMATE MCCORMICK:**  Right.
4      **PRESIDING COMMISSIONER PEREZ:**  Okay.  How
5  long did you know this victim?
6      **INMATE MCCORMICK:**  I didn't.
7      **PRESIDING COMMISSIONER PEREZ:**  You didn't.
8      **INMATE MCCORMICK:**  Just in passing.
9      **PRESIDING COMMISSIONER PEREZ:**  Just in
10  passing.  Was that the first time you met him,
11  or you'd met him before in passing?
12      **INMATE MCCORMICK:**  You know, I knew him as
13  Goody, as they used to call him.  I didn't
14  associate with him.
15      **PRESIDING COMMISSIONER PEREZ:**  Did you
16  associate with Brooks?
17      **INMATE MCCORMICK:**  Like I said, I hadn't
18  seen him since he was a little kid when I used
19  to go with his sister.
20      **PRESIDING COMMISSIONER PEREZ:**  Okay.  But
21  did you have any kind of relationship with him?
22      **INMATE MCCORMICK:**  No.
23      **PRESIDING COMMISSIONER PEREZ:**  Other than
24  you used to see his sister?
25      **INMATE MCCORMICK:**  No.
26      **PRESIDING COMMISSIONER PEREZ:**  Okay.  How
27  do you feel about this crime today, sir?

24

1      **INMATE MCCORMICK:**  I feel screwed up about

2  it.

3      **PRESIDING COMMISSIONER PEREZ:**  How's that?

4      **INMATE MCCORMICK:**  What I did, I had no

5  right to do.  And hindsight is 20/20.  At that

6  time I felt threatened and I felt that my

7  partner was threatened, and the situation now

8  that I'm thinking about it, I have no right to

9  do none of this.  I shouldn't of been carrying a

10  gun.  I shouldn't of even been at the club that

11  night, to be honest with you.

12      **PRESIDING COMMISSIONER PEREZ:**  Uh-huh.

13      **INMATE MCCORMICK:**  And I really had no

14  right to shoot the man.

15      **PRESIDING COMMISSIONER PEREZ:**  Were you

16  under the influence of alcohol or drugs at the

17  time of the offense?

18      **INMATE MCCORMICK:**  I had been drinking.

19      **PRESIDING COMMISSIONER PEREZ:**  How much had

20  you drank prior to the offense and much --

21  during what time period?

22      **INMATE MCCORMICK:**  It was quite a bit, but

23  not -- not -- I wasn't sloppy drunk, or I wasn't

24  falling down or nothing like that.  I was in

25  control of my faculties pretty much, so --

26      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

27  you indicated you felt threatened.  What caused

25

1  you feel threatened?

2      **INMATE MCCORMICK:**  Well, when a man tells

3  you -- you already got a knife, and he goes

4  under the seat and he's telling you he's going

5  to blow you away, you feel threatened.

6      **PRESIDING COMMISSIONER PEREZ:**  What

7  distance were you from him at the time that you

8  committed the offense?

9      **INMATE MCCORMICK:**  I was on the driver's

10  side of the car.

11      **PRESIDING COMMISSIONER PEREZ:**  How many

12  feet would that be?

13      **INMATE MCCORMICK:**  That wouldn't be no more

14  than 4 feet at the most.

15      **PRESIDING COMMISSIONER PEREZ:**  Okay.

16  Looking back, what options did you have, sir?

17      **INMATE MCCORMICK:**  I could of just walked

18  away.

19      **PRESIDING COMMISSIONER PEREZ:**  What else?

20      **INMATE MCCORMICK:**  Not even went over

21  there.

22      **PRESIDING COMMISSIONER PEREZ:**  What else?

23      **INMATE MCCORMICK:**  Like I said, not even

24  been down there that night.

25      **PRESIDING COMMISSIONER PEREZ:**  Or carrying

26  a weapon.

27      **INMATE MCCORMICK:**  Or that.

26

1      **PRESIDING COMMISSIONER PEREZ:**  Okay.  How -

2   - is there anything else you'd like to add in

3   regards to the commitment offense?

4      **INMATE MCCORMICK:**  No more than I'm sorry

5   that it ever happened.  That's about it.

6      **PRESIDING COMMISSIONER PEREZ:**  Did you ever

7   apologize to the family of the victim?

8      **INMATE MCCORMICK:**  No.  They know, I've

9   sent words to them to the two brothers, you

10  know, but -- as a matter of fact, I talked to

11  one, and it was no problem.

12     **PRESIDING COMMISSIONER PEREZ:**  When did you

13  talk to one?

14     **INMATE MCCORMICK:**  That was about 14 years

15  ago.

16     **PRESIDING COMMISSIONER PEREZ:**  Okay.  How

17  did you get in touch with him?

18     **INMATE MCCORMICK:**  He was here.

19     **PRESIDING COMMISSIONER PEREZ:**  He was

20  incarcerated here?

21     **INMATE MCCORMICK:**  Yeah.

22     **PRESIDING COMMISSIONER PEREZ:**  You were on

23  the same yard with him?

24     **INMATE MCCORMICK:**  I was in the hole when

25  he came.

26     **PRESIDING COMMISSIONER PEREZ:**  Uh-huh.

27     **INMATE MCCORMICK:**  And then we came out to

27

1  the yard, and I saw him a couple times before

2  they transferred him, as well as Brooks.  Brooks

3  was over at North with me.

4      **PRESIDING COMMISSIONER PEREZ:**  Both of

5  them?

6      **INMATE MCCORMICK:**  Yeah.

7      **PRESIDING COMMISSIONER PEREZ:**  And you

8  apologized the them, or did you have a

9  discussion in regards to --

10      **INMATE MCCORMICK:**  I didn't get a chance to

11  talk to Brooks.  He went to south before he

12  (indiscernible).

13      **PRESIDING COMMISSIONER PEREZ:**  What about

14  the other?

15      **INMATE MCCORMICK:**  The other brother, and I

16  haven't said anything.

17      **PRESIDING COMMISSIONER PEREZ:**  Uh-huh,

18  okay.

19      **INMATE MCCORMICK:**  All I ever talked to was

20  Tiger.

21      **COMMISSIONER BRYSON:**  With who?

22      **INMATE MCCORMICK:**  Tiger.

23      **PRESIDING COMMISSIONER PEREZ:**  Okay.

24  Anything else regarding the commitment offense,

25  sir?

26      **INMATE MCCORMICK:**  No.

27      **PRESIDING COMMISSIONER PEREZ:**  Now you were

28

 1   about 32 at the time of the offense; is that

 2   right?

 3       **INMATE MCCORMICK:**  31.

 4       **PRESIDING COMMISSIONER PEREZ:**  And you're

 5   about -- 31?

 6       **INMATE MCCORMICK:**  Yeah.

 7       **PRESIDING COMMISSIONER PEREZ:**  And you're

 8   about 53, 54?

 9       **INMATE MCCORMICK:**  54.

10       **PRESIDING COMMISSIONER PEREZ:**  Okay.

11       **INMATE MCCORMICK:**  55 in March.

12       **PRESIDING COMMISSIONER PEREZ:**  55 in March,

13   okay.  The record reflects that you have no

14   juvenile record.  Is that correct, sir?

15       **INMATE MCCORMICK:**  Correct.

16       **PRESIDING COMMISSIONER PEREZ:**  And in terms

17   of adult convictions, the record reflects that

18   you were convicted of gambling, and that was in

19   1977, and you were sentenced to one-year

20   probation and fined $130.  Is that right, sir?

21       **INMATE MCCORMICK:**  No.  I don't know where

22   that came from, but I have a printout.  Wait a

23   minute.

24       **ATTORNEY FOX:**  What kind of a printout?

25       **INMATE MCCORMICK:**  I thought I had it in

26   here.

27       **ATTORNEY FOX:**  He's showing me from the

1  State of California Department of Justice Bureau

2  of Identification.

3      **PRESIDING COMMISSIONER PEREZ:**  And I did

4  note that.  I did note that it was not on his

5  rap sheet.  And I thought if that was

6  information that you provided to the counselor

7  or to the probation officer.  Do you have any

8  idea where that information came from because I

9  was unable to find any other reference, other

10  than the counselor's report?

11      **INMATE MCCORMICK:**  The only thing I

12  received from them was a paper, and we supposed

13  to get that straight in the sentencing hearing.

14      **PRESIDING COMMISSIONER PEREZ:**  Okay.

15      **INMATE MCCORMICK:**  Because they also had me

16  down as buying a pistol in 1954.

17      **PRESIDING COMMISSIONER PEREZ:**  Okay.  You

18  may want to -- if you're not granted parole

19  today, sir, you may want to sit down with your

20  counselor and go through your Central File in

21  order to demonstrate one way or another that

22  there's nothing to support that so that can be

23  removed from your file.

24      **INMATE MCCORMICK:**  Okay.

25      **PRESIDING COMMISSIONER PEREZ:**  The record

26  does reflect that in 1973 you were convicted of

27  a misdemeanor Penal Code 415.  What would be

30

1  that, sir?

2      **INMATE MCCORMICK:**  Disturbing the peace.

3      **PRESIDING COMMISSIONER PEREZ:**  Disturbing

4  the peace.  And can you tell me the

5  circumstances of that, sir?

6      **INMATE MCCORMICK:**  It was my birthday

7  party.

8      **PRESIDING COMMISSIONER PEREZ:**  Okay.

9      **INMATE MCCORMICK:**  We was having a party

10  for my birthday and --

11      **PRESIDING COMMISSIONER PEREZ:**  Somebody

12  called law enforcement?

13      **INMATE MCCORMICK:**  A guy came by and threw

14  rocks through the window because his girlfriend

15  was in the house.  She was with somebody else.

16      **PRESIDING COMMISSIONER PEREZ:**  And then?

17      **INMATE MCCORMICK:**  And I went out and we

18  got into a fight.

19      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

20  you were arrested and subsequently convicted of

21  disturbing the peace?

22      **INMATE MCCORMICK:**  Right.  I plead guilty

23  of disturbing the peace.

24      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Is

25  there anything else that you'd like to add to

26  correct or clarify the record regarding your

27  criminal history?

31

1      **INMATE MCCORMICK:**  That's it.

2      **PRESIDING COMMISSIONER PEREZ:**  So you have

3  a pretty clean criminal history for the most

4  part, with the exception of that one conviction,

5  up until you were 31.

6      **INMATE MCCORMICK:**  Uh-huh.

7      **PRESIDING COMMISSIONER PEREZ:**  Okay.  In

8  terms of the personal factors, sir, the record

9  does reflect that you are a only child, and

10  correct me if I'm wrong, because there are

11  references that you've been married twice, but

12  it appears that you've married three times.  Is

13  that correct?

14      **INMATE MCCORMICK:**  Yes.

15      **PRESIDING COMMISSIONER PEREZ:**  Three times.

16  You've been married three time and you have four

17  children?

18      **INMATE MCCORMICK:**  No.

19      **PRESIDING COMMISSIONER PEREZ:**  How many

20  children do you have?

21      **INMATE MCCORMICK:**  I have seven children.

22      **PRESIDING COMMISSIONER PEREZ:**  You have

23  seven children?

24      **INMATE MCCORMICK:**  And I got four adopted

25  children.

26      **PRESIDING COMMISSIONER PEREZ:**  So you have

27  three biological and four adopted?

32

1      **INMATE MCCORMICK:**  Uh-huh, six -- I've got

2  two by Patricia.

3      **PRESIDING COMMISSIONER PEREZ:**  Okay.  How

4  many total biological?

5      **INMATE MCCORMICK:**  Six.

6      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Six

7  biological.

8      **INMATE MCCORMICK:**  Uh-huh.

9      **PRESIDING COMMISSIONER PEREZ:**  And then

10  four adopted?

11      **INMATE MCCORMICK:**  Right.

12      **PRESIDING COMMISSIONER PEREZ:**  And when did

13  you adopt these children?

14      **INMATE MCCORMICK:**  Over the years.  One of

15  them was about -- the last one was about eight

16  years ago.

17      **PRESIDING COMMISSIONER PEREZ:**  Eight years

18  ago?  Were you married eight years ago?

19      **INMATE MCCORMICK:**  No.  It was 10 years ago

20  that I was married to her mother.

21      **PRESIDING COMMISSIONER PEREZ:**  Okay.

22      **INMATE MCCORMICK:**  No.  It was longer than

23  that because we got divorced in '96.

24      **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

25  you have three divorces, six biological and four

26  adopted?

27      **INMATE MCCORMICK:**  Uh-huh.

33

1      **PRESIDING COMMISSIONER PEREZ:**  And

2  currently not married?  Is that correct?

3      **INMATE MCCORMICK:**  Right.

4      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Do

5  you keep in touch with your children?

6      **INMATE MCCORMICK:**  Yes, I do.

7      **PRESIDING COMMISSIONER PEREZ:**  How are your

8  children doing, sir?

9      **INMATE MCCORMICK:**  They're doing good,

10  except for one.

11      **PRESIDING COMMISSIONER PEREZ:**  What ages?

12      **INMATE MCCORMICK:**  Well, the youngest one

13  is 27 now.

14      **PRESIDING COMMISSIONER PEREZ:**  Okay.

15      **INMATE MCCORMICK:**  The oldest is 38.

16      **PRESIDING COMMISSIONER PEREZ:**  And you say

17  they're all doing well.  They're all adults

18  doing well?

19      **INMATE MCCORMICK:**  Except for Michelle.

20      **PRESIDING COMMISSIONER PEREZ:**  And what's

21  the matter with Michelle?

22      **INMATE MCCORMICK:**  She's got diabetes and

23  her eyesight is going and her kidneys are

24  failing.  She's on dialysis and what not.

25      **PRESIDING COMMISSIONER PEREZ:**  She's pretty

26  young.  How old is she, sir?

27      **INMATE MCCORMICK:**  She's 33.

34

1     **PRESIDING COMMISSIONER PEREZ:**  That's
2  pretty young.
3     **INMATE MCCORMICK:**  Yeah.
4     **PRESIDING COMMISSIONER PEREZ:**  That's
5  pretty young.
6     **INMATE MCCORMICK:**  She was born with it.
7     **PRESIDING COMMISSIONER PEREZ:**  You keep in
8  touch with all of your children though?
9     **INMATE MCCORMICK:**  Yes.
10    **PRESIDING COMMISSIONER PEREZ:**  Do you have
11 any siblings?
12    **INMATE MCCORMICK:**  No, I don't.
13    **PRESIDING COMMISSIONER PEREZ:**  Oh, that's
14 right.  You're an only child.  You don't have
15 any siblings.  You don't have any half siblings
16 or step siblings?
17    **INMATE MCCORMICK:**  Just some kids that my
18 father adopted.  They're like my brothers.
19    **PRESIDING COMMISSIONER PEREZ:**  I see.
20    **INMATE MCCORMICK:**  He raised them.
21    **PRESIDING COMMISSIONER PEREZ:**  Do you keep
22 in touch with them?
23    **INMATE MCCORMICK:**  Yeah.
24    **PRESIDING COMMISSIONER PEREZ:**  Okay.  The
25 record does reflect that you were in the army
26 from 1981 up until the commitment offense?
27    **INMATE MCCORMICK:**  Uh-huh.

35

1       **PRESIDING COMMISSIONER PEREZ:**  What was
2  your MOS?

3     **INMATE MCCORMICK:**  My MOS was 13 bang bang.

4       **PRESIDING COMMISSIONER PEREZ:**  Which is?

5     **INMATE MCCORMICK:**  Artillery.

6       **PRESIDING COMMISSIONER PEREZ:**  Artillery.
7  And that was your MOS throughout your entire
8  service in the army?

9     **INMATE MCCORMICK:**  It was that and special
10  weapons.

11      **PRESIDING COMMISSIONER PEREZ:**  Special
12  weapons.  So you were in the service for two
13  years?

14     **INMATE MCCORMICK:**  Right.

15      **PRESIDING COMMISSIONER PEREZ:**  '81 to '83
16  up until you -- your discharge.  How about your
17  parents, still alive today?

18     **INMATE MCCORMICK:**  No.  They're both dead.

19      **PRESIDING COMMISSIONER PEREZ:**  Your mom
20  died in 2003?  Is that right?

21     **INMATE MCCORMICK:**  Yeah.

22      **PRESIDING COMMISSIONER PEREZ:**  How was your
23  relationship with your parents when your were
24  growing up?

25     **INMATE MCCORMICK:**  Good.

26      **PRESIDING COMMISSIONER PEREZ:**  Very good?

27     **INMATE MCCORMICK:**  Uh-huh.

36

1      **PRESIDING COMMISSIONER PEREZ:**  Is there any
2  domestic violence in the home?
3      **INMATE MCCORMICK:**  No.
4      **PRESIDING COMMISSIONER PEREZ:**  Do you
5  believe it was a nurturing, nice, solid?
6      **INMATE MCCORMICK:**  It worked for me.
7      **PRESIDING COMMISSIONER PEREZ:**  It worked
8  for you?
9      **INMATE MCCORMICK:**  Yeah.
10      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Does
11  that mean yes?
12      **INMATE MCCORMICK:**  Yeah.
13      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very
14  good, sir.  The record also reflects that you
15  have skills in cement finishing, warehousing and
16  truck driving?
17      **INMATE MCCORMICK:**  Right.
18      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And
19  that prior to entering the service, you worked
20  for a building maintenance company?
21      **INMATE MCCORMICK:**  I owned it.
22      **PRESIDING COMMISSIONER PEREZ:**  You owned
23  it?
24      **INMATE MCCORMICK:**  Yeah.
25      **PRESIDING COMMISSIONER PEREZ:**  You started
26  the company yourself?
27      **INMATE MCCORMICK:**  My father and I did.

37

1      **PRESIDING COMMISSIONER PEREZ:**  Your father

2  and you did.  And then what happened?

3      **INMATE MCCORMICK:**  I went into the service.

4      **PRESIDING COMMISSIONER PEREZ:**  And then

5  your dad took over the business?

6      **INMATE MCCORMICK:**  He's still running it,

7  until he died.

8      **PRESIDING COMMISSIONER PEREZ:**  Until he

9  died.  When did he pass?

10      **INMATE MCCORMICK:**  He died in '85.

11      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

12  who has the business now?

13      **INMATE MCCORMICK:**  It was sold by my

14  stepmother.

15      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Is

16  there anything else you'd like to add regarding

17  your personal factors?

18      **INMATE MCCORMICK:**  I also got two trades

19  since I been here, too.

20      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

21  Commissioner Nielsen will discuss that with you.

22  Okay.  Anything else regarding your personal

23  factors?

24      **INMATE MCCORMICK:**  No.  That's about it.

25      **PRESIDING COMMISSIONER PEREZ:**  Okay.  In

26  terms of your parole plans, sir, I'm a little

27  confused.  The record reflects -- and I'm

38

1  looking at the April 2004 counselor's report,

2  which indicates that it is your plan to live

3  with your ex-wife Patricia McCormick?

4      **INMATE MCCORMICK:**  Uh-huh.

5      **PRESIDING COMMISSIONER PEREZ:**  There is a

6  letter to that effect in your file?

7      **INMATE MCCORMICK:**  Right.

8      **PRESIDING COMMISSIONER PEREZ:**  There's also

9  a letter from your fiancé, who's indicated the

10 exact same thing, sir?

11     **INMATE MCCORMICK:**  No.

12     **PRESIDING COMMISSIONER PEREZ:**  What is your

13 plan?

14     **INMATE MCCORMICK:**  She is not your fiancé.

15     **PRESIDING COMMISSIONER PEREZ:**  Why does she

16 write a letter saying that she's your fiancé and

17 upon your release to parole you can live with

18 her, and we also have a letter from your ex-wife

19 wife saying the exact same thing.

20     **INMATE MCCORMICK:**  This is what she figures

21 she can help to get me out.  Now, you know, two

22 of her kids are the ones that I adopted, and I

23 had plans at one time to go back there and marry

24 her, but too difficult.

25     **PRESIDING COMMISSIONER PEREZ:**  Now, who is

26 she now?

27     **INMATE MCCORMICK:**  She's just a friend now.

39

1      **PRESIDING COMMISSIONER PEREZ:**  And does she

2  know this?

3      **INMATE MCCORMICK:**  Yes.

4      **PRESIDING COMMISSIONER PEREZ:**  Does she

5  know this?

6      **INMATE MCCORMICK:**  She should.

7      **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

8  knows she's no longer your fiancé?

9      **INMATE MCCORMICK:**  Right.

10      **PRESIDING COMMISSIONER PEREZ:**  And you have

11  no plan to marry her?

12      **INMATE MCCORMICK:**  She wrote that letter

13  because of what Pat had said, and her and Pat

14  did not get along.

15      **PRESIDING COMMISSIONER PEREZ:**  Your ex-

16  wife?

17      **INMATE MCCORMICK:**  Right.  So when I told

18  her -- after my mother had died, me and her had

19  a falling out.

20      **PRESIDING COMMISSIONER PEREZ:**  You and your

21  fiancé?

22      **INMATE MCCORMICK:**  Right.

23      **PRESIDING COMMISSIONER PEREZ:**  Ex-fiancé.

24      **INMATE MCCORMICK:**  Right.  And so she

25  figured I was -- because I was going back to

26  Pat, and she wrote that.  And I didn't even know

27  she had wrote it until right now.

40

1    **PRESIDING COMMISSIONER PEREZ:**  Do you still

2  keep in touch with her?

3    **INMATE MCCORMICK:**  I haven't heard from her

4  since May.

5    **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

6  there is no -- I couldn't find a date -- well,

7  it was received in April of 2005.  So that's

8  fairly recent.  When was the last time you had

9  contact with her?

10    **INMATE MCCORMICK:**  Like I said, May.

11    **PRESIDING COMMISSIONER PEREZ:**  May.

12    **INMATE MCCORMICK:**  And I got a certified

13  letter from her telling me she had sent the

14  letter to the Board.

15    **PRESIDING COMMISSIONER PEREZ:**  Okay.  Is it

16  your plan to live with your ex-wife and

17  essentially be married to her, Patricia

18  McCormick?

19    **INMATE MCCORMICK:**  After I come out from

20  the program from Allied.

21    **PRESIDING COMMISSIONER PEREZ:**  Okay.  And I

22  do note for the record that it appears that your

23  plan is to go into the Allied Fellowship

24  Program, which is an alcohol residential

25  treatment program.  Is that correct, sir?

26    **INMATE MCCORMICK:**  Uh-huh.

27    **PRESIDING COMMISSIONER PEREZ:**  You're going

41

1   in there as a patient?

2       **INMATE MCCORMICK:**  No.  Pardon?

3       **PRESIDING COMMISSIONER PEREZ:**  As what?

4   What is going to be your role within this

5   facility?

6       **INMATE MCCORMICK:**  It's job training, you

7   know, is what it does.

8       **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

9   you're going into a residential treatment

10  program?

11      **INMATE MCCORMICK:**  Right.

12      **PRESIDING COMMISSIONER PEREZ:**  For the

13  purposes of gaining job skills?

14      **INMATE MCCORMICK:**  That and making sure I

15  don't substance abuse.

16      **PRESIDING COMMISSIONER PEREZ:**  Okay.

17      **INMATE MCCORMICK:**  Yeah.

18      **PRESIDING COMMISSIONER PEREZ:**  Because I --

19  in the record there is information, which

20  indicates that you've previously used marijuana,

21  not on a regular basis, but there is no

22  indication that you have a history of drug use.

23      **INMATE MCCORMICK:**  No, I don't.

24      **PRESIDING COMMISSIONER PEREZ:**  Is that

25  correct?

26      **INMATE MCCORMICK:**  Correct.

27      **PRESIDING COMMISSIONER PEREZ:**  But you're

42

1  afraid that you might.

2      **INMATE MCCORMICK:**  No.  Just to make sure

3  that I don't go back to drinking alcohol and

4  stuff again.

5      **PRESIDING COMMISSIONER PEREZ:**  Do you have

6  a history of using alcohol to excess?

7      **INMATE MCCORMICK:**  No, not excess, but I

8  just want to stay away from it.

9      **PRESIDING COMMISSIONER PEREZ:**  You just

10  don't want any substances, legal or not?

11      **INMATE MCCORMICK:**  None.  None.

12      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

13  the program also provides you with job training?

14      **INMATE MCCORMICK:**  Right.

15      **PRESIDING COMMISSIONER PEREZ:**  And what --

16  is there a particular field you're looking at

17  going into in?

18      **INMATE MCCORMICK:**  More or less, probably

19  forklift operator.

20      **PRESIDING COMMISSIONER PEREZ:**  Forklift

21  operation?

22      **INMATE MCCORMICK:**  Uh-huh.

23      **PRESIDING COMMISSIONER PEREZ:**  I do note

24  for the record that we have a letter dated

25  February 8th, 2004 -- 5 from the Allied

26  Fellowship Service, Mr. Harold Matthews, who is

27  the program manager.  This program is out of

43

1  Oakland.  Is that right, sir?

2      **INMATE MCCORMICK:**  Right.

3      **PRESIDING COMMISSIONER PEREZ:**  And in the

4  record he states.

5              Allied Fellowship Services is a

6              State of California certified

7              residential alcohol and drug

8              program located in Oakland.  AFS a

9              contracted with the California

10             Department of Corrections to

11             receive men and women released from

12             the California prisons.  For over

13             40 years AFS has been receiving

14             parolees and has successfully

15             reduced the rate of recidivism

16             among its clients, mainly because

17             of its intense treatment and

18             reintegration services.  Allied

19             Fellowship Service is extending

20             service to Mr. Frank McCormick upon

21             release from the California

22             Department of Corrections.

23             Services will include housing,

24             relapse prevention, individual and

25             group counseling, community and

26             family reintegration skills,

27             employment training, and placement

44

1              and more.

2       Let me ask you this question, sir.

3       **INMATE MCCORMICK:**  Uh-huh.

4       **PRESIDING COMMISSIONER PEREZ:**  What is your

5  primary motivation for going into this program

6  upon your release to parole, as opposed to

7  living with your ex-wife?

8       **INMATE MCCORMICK:**  Well, I've been down for

9  22 years.

10      **PRESIDING COMMISSIONER PEREZ:**  Uh-huh.

11      **INMATE MCCORMICK:**  Things have changed.  I

12  need to catch up on what's happened out there

13  before I just go out there, you know.

14      **PRESIDING COMMISSIONER PEREZ:**  Uh-huh.

15      **INMATE MCCORMICK:**  So that's how I feel

16  about it.

17      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

18  good, sir.  So how long would you remain within

19  this program, do you think?

20      **INMATE MCCORMICK:**  Six-month program.

21      **PRESIDING COMMISSIONER PEREZ:**  Oh.  It's a

22  six-month program?

23      **INMATE MCCORMICK:**  Right.

24      **PRESIDING COMMISSIONER PEREZ:**  Are you able

25  the extend your time there?

26      **INMATE MCCORMICK:**  Probably could.

27      **PRESIDING COMMISSIONER PEREZ:**  Probably

45

1  could.

2      **INMATE MCCORMICK:**  Yeah.

3      **PRESIDING COMMISSIONER PEREZ:**  And after

4  that, if things work out, move in with your ex-

5  wife?

6      **INMATE MCCORMICK:**  Yeah, I go home.

7      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

8  good.  How many children do you have with your

9  ex-wife?

10      **INMATE MCCORMICK:**  I have three with her.

11      **PRESIDING COMMISSIONER PEREZ:**  Three with

12  her.

13      **INMATE MCCORMICK:**  Uh-huh.

14      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

15  good.  In terms of employment, as you've

16  indicated, it's your plan to go into this

17  program and gain some skills in the area of

18  forklift driving, but I also notice that you

19  also have some skills that you've obtained since

20  you've incarcerated that Commissioner Nielsen

21  will discuss with you later that you would be

22  able to use upon your release to parole.  In

23  terms of letters of support, sir, you've

24  provided some letters to support to us.  One has

25  already been read into the record from the

26  Allied Fellowship Service, which is the

27  residential treatment program, which we

46

1    discussed earlier.  We also have a letter dated
2    April 18th, 2005, from your ex-wife Patricia
3    McCormick, who is the individual who you would
4    move into after completing this particular
5    program?
6        **INMATE MCCORMICK:**  Yes.
7        **PRESIDING COMMISSIONER PEREZ:**  She
8    indicates she's known you for over 40 years and
9    was married to you twice, and that you have
10   three grown children together.  She further
11   states that it is your plan -- you and her plan
12   to marry again.  She further states, I think
13   what she meant to say is, I have seen a great
14   change in Frank over the years.  "He's
15   remorseful and understands the nature of his
16   crime.  I'm offering him a place to live,
17   transportation, and financial help, and whatever
18   else I need to get his -- himself together.  I
19   am going to give him the friends he needs to get
20   himself."
21       **INMATE MCCORMICK:**  It's funds.
22       **PRESIDING COMMISSIONER PEREZ:**  Funds,
23   excuse me, sorry.  "The funds that he needs to
24   get his business started.  I know that he will
25   do good and there is a lot of support for him."
26   What kind of business, sir?
27       **INMATE MCCORMICK:**  Dry cleaning, more than

47

1   likely.

2       **PRESIDING COMMISSIONER PEREZ:**  Dry

3   cleaning.  I do note that you have completed

4   vocational dry cleaning.

5       **INMATE MCCORMICK:**  Right.

6       **PRESIDING COMMISSIONER PEREZ:**  In the

7   institution.  Is that correct, sir?

8       **INMATE MCCORMICK:**  Right.

9       **PRESIDING COMMISSIONER PEREZ:**  We have

10  another letter, this one is from Tina M. Davis.

11  There's no date on this letter.  This letter is

12  not signed.  When was this letter received, sir?

13      **INMATE MCCORMICK:**  I just got it two weeks

14  ago.

15      **PRESIDING COMMISSIONER PEREZ:**  Two weeks

16  ago?

17      **INMATE MCCORMICK:**  Where's the envelope.

18      **PRESIDING COMMISSIONER PEREZ:**  And what's

19  that dated, sir?

20      **INMATE MCCORMICK:**  11th of October.

21      **PRESIDING COMMISSIONER PEREZ:**  11th of

22  October.  And she lives in Chino.  Is that

23  right, sir?

24      **INMATE MCCORMICK:**  Right.

25      **PRESIDING COMMISSIONER PEREZ:**  And who is

26  Ms. Davis?

27      **INMATE MCCORMICK:**  That's a friend of my

48

1  daughters.  She grew up with them.

2      **PRESIDING COMMISSIONER PEREZ:**  She writes

3  to the Board and she indicates.

4              I'm writing to you today to

5              hopefully in any kind of way be

6              heard in the decision of allowing

7              Mr. McCormick the opportunity to

8              come home to family that has been

9              his support system since his

10             unfortunate incarceration.  Mr.

11             McCormick was like a father figure

12             to me while I grew up with two of

13             his daughters.  Being a child

14             raised with no father in the home,

15             he became the closest thing to

16             that.

17     Unfortunately, when he became incarcerated,

18  I suffered the loss along with his daughters

19  Moniqa (phonetic).

20     **INMATE MCCORMICK:**  Moniqa.

21     **PRESIDING COMMISSIONER PEREZ:**  Moniqa and

22  Fonta (phonetic).

23     **INMATE MCCORMICK:**  Right.

24     **PRESIDING COMMISSIONER PEREZ:**  "We have all

25  grown since then and have remained to be best

26  friends and are now experiencing parenting of

27  our own."  She further states that you are

1  missed very much and you have a very strong

2  support system, as well as a wife that loves

3  you.  She further states that she strongly

4  believes that you have paid dearly for the crime

5  and you've missed out on much since your

6  incarceration.  "We know that if he could be

7  given the opportunity to come home to his

8  family, you will be to rest assured that you

9  will never have to see Mr. McCormick under the

10  same circumstances that we are before -- that

11  are before you now."  Okay.  Then we have

12  another letter dated October 11th, 2005, and

13  this is from your daughter Fonta McCormick,

14  right, sir?

15      **INMATE MCCORMICK:**  Right.

16      **PRESIDING COMMISSIONER PEREZ:**  In her

17  letter she conveys her support for you and

18  indicates that she feels that you are very

19  remorseful for the crime that you've committed.

20  She further states that she believes it is time

21  for you to come home.  And she further states

22  that if for any reason the family of the victim

23  is concerned for their safety, "I can assure

24  you, and so can my father, that there is no

25  reason for them to fear because no retaliation

26  will be taken."  Any idea why she would make

27  that particular statement, sir?

50

1      **INMATE MCCORMICK:**  Yeah, she asked why she

2  denied me last year, and I sent them a copy of

3  the letter.

4      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

5  what letter was that, sir?

6      **INMATE MCCORMICK:**  The one from the Seaside

7  Police Department.

8      **PRESIDING COMMISSIONER PEREZ:**  The Seaside

9  Police Department.  Okay.  I see.

10                 Just think about it.  Why would he

11                 fight so hard to get free just to

12                 track someone down to cause him

13                 harm or risk of getting the freedom

14                 taking away again.  It's not in his

15                 character.  He has reason to be

16                 free and to live.  I have a place

17                 in Reno, Nevada.  If you all decide

18                 to release him this time that he

19                 can stay in a positive surrounding.

20      And what does your daughter do, sir?

21      **INMATE MCCORMICK:**  She's a medical biller.

22      **PRESIDING COMMISSIONER PEREZ:**  Medical

23  biller.  Okay.  Very good.  And how old is she?

24      **INMATE MCCORMICK:**  She's 27 now.

25      **PRESIDING COMMISSIONER PEREZ:**  27.  She

26  live alone?

27      **INMATE MCCORMICK:**  Her and her son.

51

1      **PRESIDING COMMISSIONER PEREZ:**  How old is

2  her son?

3      **INMATE MCCORMICK:**  He'll be two in

4  February.

5      **PRESIDING COMMISSIONER PEREZ:**  How long has

6  she lived in Reno?

7      **INMATE MCCORMICK:**  She's been up there

8  about nine months now.

9      **PRESIDING COMMISSIONER PEREZ:**  Nine months.

10  Okay.  She moved there from California?

11      **INMATE MCCORMICK:**  Yeah.

12      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

13  good, sir.  Would you like me to read into the

14  record the letter from the lady that indicates

15  she's your fiancé, and that you can live with

16  her upon your release to parole?

17      **INMATE MCCORMICK:**  If you want to, you can.

18  I haven't seen it.

19      **PRESIDING COMMISSIONER PEREZ:**  Is that a

20  legitimate letter to read into the record?  If

21  not, I will not read it into the record.

22      **INMATE MCCORMICK:**  No, it's not.

23      **PRESIDING COMMISSIONER PEREZ:**  Okay.  I

24  will not read it into the record.  Okay.  Are

25  there any other letters of support, offers of

26  employment, offers of residence that I've not

27  read into the record, sir?

52

1      **INMATE MCCORMICK:**  Well, we got this thing

2   from PIA where I work at that -- it should be a

3   chrono attached to it in there from Charlie

4   Walker as to the job things that PIA does.  The

5   main warehouse is in Sacramento.

6      **PRESIDING COMMISSIONER PEREZ:**  Is it a

7   specific offer for employment?

8      **INMATE MCCORMICK:**  Yeah, well, they got

9   people -- to place us through the different

10  programs to give us -- here's the chrono.

11     **PRESIDING COMMISSIONER PEREZ:**  Okay.  It's

12  probably in your file.

13     **INMATE MCCORMICK:**  Yeah, it should be.

14     **PRESIDING COMMISSIONER PEREZ:**  Okay.

15     **INMATE MCCORMICK:**  The IOP program.  It

16  just tells what's it's all about.

17     **PRESIDING COMMISSIONER PEREZ:**  This chrono

18  indicates that Inmate McCormick has successfully

19  completed the third phase of our inmate

20  employable program.  It further states that you

21  have now received instructions on job searching

22  while incarcerated, interview tips, networking

23  to find employment, and accessing community

24  resources related to finding employment.

25              With employment being a

26              prerequisite to parole, it is

27              paramount for ex-offenders to have

53

```
 1                    the ability to effectively access
 2                    employment recourses.  With the
 3                    completion of this phase of our
 4                    program, Inmate McCormick's chance
 5                    of finding gainful employment upon
 6                    release is excellent.  He is
 7                    commended for his diligence and
 8                    participation in our employment
 9                    employability program.
10        And that particular chrono -- it's a
11   laudatory chrono.  It's dated September 9th,
12   2005.  Authored by the superintendent in PIA --
13   it's the superintendent to IEP coordinator
14   Charlie D. Walker, W-A-L-K-E-R.  Okay.
15        INMATE MCCORMICK:  Yeah.
16        PRESIDING COMMISSIONER PEREZ:  Anything
17   else in regards to your parole plans?
18        INMATE MCCORMICK:  That's about it.
19        ATTORNEY FOX:  He's also given me two
20   papers that describe pretty much in depth what
21   the inmate employment program is.
22        PRESIDING COMMISSIONER PEREZ:  Okay.  And
23   we'll look those over and consider those during
24   our deliberations.  Okay.  Very good.  Sir,
25   pursuant to Penal Code Section 3042 notices were
26   sent to agencies that might have a direct
27   interest in your case or that would have a
```

54

1  direct interest in your case, such as the Public

2  Defender's Office, in the event that you were

3  represented by the public defenders, the

4  District Attorney's office, law enforcement, and

5  the Superior Court, and we do note for the

6  record that we did receive one letter, but we're

7  not going to enter it into the record or

8  consider it, in that it was received late.

9  Okay.

10      **INMATE MCCORMICK:**  Okay.

11      **ATTORNEY FOX:**  I do have a few other

12  documents.

13      **PRESIDING COMMISSIONER PEREZ:**  Are they

14  employment offers or offers of residence?

15  That's specifically what I'm looking for.

16      **INMATE MCCORMICK:**  Well, this tells what

17  the program does about finding us jobs.  They

18  got agents in place to find jobs once we get

19  out.

20      **ATTORNEY FOX:**  What Mr. McCormick has done

21  is taken the initiative to put together a job

22  search, and I think it would be worthy of

23  consideration.

24      **PRESIDING COMMISSIONER PEREZ:**  Okay.  We'll

25  certainly consider that.

26      **ATTORNEY FOX:**  And also what he talked

27  about from PIA September 9th.

55

1      **PRESIDING COMMISSIONER PEREZ:**  We'll

2  certainly consider those documents.  Okay.

3      **ATTORNEY FOX:**  And he did do the

4  significant effort to compile that.

5      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

6  good.  We'll look at that.  Anything else

7  regarding employment or residence?

8      **INMATE MCCORMICK:**  No.  That's it.

9      **PRESIDING COMMISSIONER PEREZ:**  At this time

10  Commissioner Nielsen will discuss with you

11  everything you've done since your last hearing.

12      **DEPUTY COMMISSIONER NIELSEN:**  All right,

13  sir, the disciplinaries.  You had a few but sort

14  of cleaned your up act up in the late '90s,

15  115s, disobeying an order, threatening staff --

16      **DEPUTY COMMISSIONER NIELSEN:**  We're on Side

17  Two now.  You said that staff was what now, sir?

18      **INMATE MCCORMICK:**  The 115 was reduced to

19  disrespect towards staff.

20      **DEPUTY COMMISSIONER NIELSEN:**  Okay.  And we

21  don't have any confirmation of that.  All we

22  have a summary sheet.  The C file does not

23  contain the individual disciplinaries, which is

24  the norm, but I have no necessary reason to

25  dispute you.  Another performance one, a failure

26  to report, altercation, and I think it meant

27  alteration, not altercation.  You wouldn't be

56

1   having an altercation with a court document, I
2   gather, and that was '95, and '98 was your most
3   recent, and that was grooming standards.  You
4   accrued seven 128s.  Most recent being '99 for
5   disrespect of staff, one was grand-mothering,
6   failure to report, failure to complete job
7   assignment, refusing to report, out of bounds,
8   and unauthorized absence.  Any particular thing
9   you or your counsel would like the observe
10  related to the disciplinaries beyond your
11  clarification that you just offered, sir?
12          **INMATE MCCORMICK:**  No.
13          **DEPUTY COMMISSIONER NIELSEN:**  Okay.  I do
14  have information in the Central File about the
15  employment employability -- Inmate Employability
16  Program.  You had completed anger management in
17  '02, dating from 1995, fairly steadily.  I see
18  chronos from '98, '99, '01, '02, '03, 04, '05.
19  You have engaged NA.  You did a four-hour video,
20  or review date four-hour video, re-engaging in
21  society.  In '96 you did coach for kids,
22  participated in that form of making amends to
23  society.  In '96 you worked for Friends Outside,
24  and they are the support group for families of
25  inmates.  In '95 you did a life skills workshop
26  -- or excuse me, life skills course with Dr.
27  Bakemen.  You did children walk-a-thon in '95.

57

1  You were MAC president in '95.  That's a

2  leadership role.  Anger management, I think I

3  mentioned.  You have a positive chrono from Bill

4  Bertain (phonetic) in '98.  You have completed

5  many modules and, in fact, a complete vocational

6  dry cleaning program.  I saw many certificates

7  in there, including a air resources board

8  certificate.  You have certificates for

9  vocational small engine and did an executive

10 business administration course in 1996.

11 Recently, in the chrono you submitted here,

12 Inmate Employability Program and you did offer

13 some more information about the Inmate

14 Employability Program for us to consider today.

15 You have a series of chronos through '01, hand

16 router training, sander and assembly, free --

17 fire safety, power tools, also took a typing

18 test.

19         **INMATE MCCORMICK**:  Yeah.

20         **DEPUTY COMMISSIONER NIELSEN**:  And your work

21 record in furniture has been above average to

22 exceptional throughout, so you have a lot of

23 talent in furniture assembly and can be

24 gainfully employed therein.  And that seems to

25 pretty well summarize things.  Did I miss

26 anything, sir?

27         **INMATE MCCORMICK**:  I don't know if this one

58

1  made it to the file or not.  I just got it the
2  other day.
3      **DEPUTY COMMISSIONER NIELSEN**:  Let me see
4  what it is.
5      **ATTORNEY FOX**:  It's a work experience
6  evaluation.
7      **DEPUTY COMMISSIONER NIELSEN**:  Okay.  As
8  furniture assembler, edge sander, ladder, power
9  tools.  You're rated number one skill rating,
10  you're rated number one as a furniture
11  assembler.  That would certainly corroborate
12  with the other reports that I've read into the
13  record already, in terms of punctuality, ability
14  to work with others, to take directions, accept
15  criticism, reliability, willingness to learn and
16  an ability to learn new tasks.  Overall attitude
17  towards job, excellent.  You continue to be a
18  very good worker who needs little supervision
19  and he gets well along with staff and will other
20  inmates.  He completes his assigned task in a
21  timely manner.  That would be your work
22  superintendent Walker.  Very good.
23      **ATTORNEY FOX**:  Thank you.
24      **INMATE MCCORMICK**:  He forgot about these
25  too.
26      **ATTORNEY FOX**:  What are these?
27      **INMATE MCCORMICK**:   FEMA

59

1        **DEPUTY COMMISSIONER NIELSEN**:  Anything else

2  then you would like to?

3        **ATTORNEY FOX**:  Yes.  And I'm sorry I didn't

4  give these to you earlier.

5        **INMATE MCCORMICK**:  I got one in there, and

6  I got five of them in there.  They stopped them

7  --

8        **DEPUTY COMMISSIONER NIELSEN**:  These are

9  FEMA reports?

10       **ATTORNEY FOX**:  Right.

11       **INMATE MCCORMICK**:  Right.

12       **DEPUTY COMMISSIONER NIELSEN**:  Yeah, they

13  look FEMA.  Yeah, there's a whole series of

14  Federal Emergency Management Institute

15  certificates, animals in disaster, awareness and

16  preparedness, leadership and influence,

17  effective communication and emergency

18  preparedness, and that is series it looks you

19  took in 2004, sir?

20       **INMATE MCCORMICK**:  Uh-huh.

21       **DEPUTY COMMISSIONER NIELSEN**:  Okay.  I got

22  those now recorded as well.

23       **ATTORNEY FOX**:  Thank you.

24       **DEPUTY COMMISSIONER NIELSEN**:  Also good

25  accomplishments.  Anything you'd like to add

26  before we go to the psych reports?

27       **INMATE MCCORMICK**:  That's it.

60

1      **ATTORNEY FOX:**  Thank you.

2      **DEPUTY COMMISSIONER NIELSEN:**  All right.

3   The most recent Dr. Gamard, if released to

4   community, violence potential estimated to be no

5   higher than the average citizen in the

6   community.  Inmate is competent and responsible

7   for his behavior and has the capacity to abide

8   by institutional standards, and generally has

9   done so during incarceration.  No mental

10   disorder which would necessitate treatment,

11   either in or out of custody.  No recommendations

12   for alcohol problems, but is recommended you

13   continue to go to NA meetings.  There is an

14   indication that you showed good insight to your

15   commitment offense in your discussions with the

16   writer.  This is a discussion of the crime, and

17   we'll talk about that a little bit later, and

18   nothing particular further remarkable.  Earlier

19   reports are similar and earlier recommendations.

20   Just continue that you would attend AA, complete

21   voc training in dry cleaning and you did that,

22   so that's about all we have.  Anything you'd

23   like to additionally add or observe related to

24   Dr. Gamard's report?

25      **INMATE MCCORMICK:**  No.

26      **DEPUTY COMMISSIONER NIELSEN:**  Thank you.  I

27   will return to the Chair.

61

1      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Thank

2  you.  At this time I'd like to give counsel the

3  opportunity to ask questions.

4      **ATTORNEY FOX:**  No, no questions, thank you.

5      **PRESIDING COMMISSIONER PEREZ:**  Any

6  questions from the Commissioner before I ask

7  counsel for her closing statement?

8      **DEPUTY COMMISSIONER NIELSEN:**  No, that's

9  okay.

10     **COMMISSIONER BRYSON:**  No, none thanks.

11     **PRESIDING COMMISSIONER PEREZ:**  Counsel.

12     **ATTORNEY FOX:**  Thank you.  Yes.  Mr.

13  McCormick would have you find him suitable today

14  and ask that you set the term for his release.

15  Turning first of all to the crime of commitment,

16  Mr. McCormick has expressed sincere remorse

17  consistently, and what he says is the truth of

18  what happened that evening.  It was a mistake

19  that he is regretting and will regret for the

20  rest of his life.  He's fully discussed the

21  possession of the weapon and the thoughts going

22  through his head at that time.  Turning to his

23  institutional adjustment, Mr. McCormick has done

24  very well.  After a period of adjustment with

25  the 115s and the 128(a)s, he's been totally

26  disciplinary free since 1999, and that was the

27  date of the last 128.  Although, technically not

62

1    a disciplinary, it's a counseling chrono.

2    Counterpoint to that, are all the laudatory

3    chronos for work, for giving back to his

4    community here, he's just done a remarkable job

5    trying to do -- make the best of his life such

6    as he can as he sits here.  Turning to the

7    parole plans, he's got wonderful parole plans,

8    and although we did discuss the espoused fears

9    from the Seaside Police Department regarding

10   that investigation, they're fears could be

11   assuaged by looking at the parole plans in

12   Sacramento, which is far from Monterey.  So I

13   don't believe that any credence at all should be

14   given to those statements from that particular

15   police department.  Also regarding the parole

16   plans, Mr. McCormick is unique, in that he's

17   arranged for transition natural housing, and

18   this further buttressing the realistic aspect of

19   his plans.  This is a man who would get out and

20   who will not fail.  He knows the resources he

21   can access in the event he's having troubles and

22   can dissipate any of those ill feelings.  Also,

23   to supplement whatever earnings he'd have on the

24   outside, having served for a couple of years in

25   the military, he's be entitled to veteran's

26   benefits, so that's something that could be

27   considered as well.  So that having been said,

63

 1  I'll submit, unless there's anything that Mr.

 2  McCormick would like to add.

 3      **PRESIDING COMMISSIONER PEREZ:**  Mr.

 4  McCormick, before I ask you for your closing

 5  statement, your ex-wife, she lives in

 6  Sacramento?

 7      **INMATE MCCORMICK:**  Right.

 8      **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

 9  looking at the Allied Fellowship Service at the

10  bottom, I'm not sure if the program is in

11  Oakland or Martinez.

12      **INMATE MCCORMICK:**  It's in Oakland.

13      **PRESIDING COMMISSIONER PEREZ:**  It's in

14  Oakland.

15      **INMATE MCCORMICK:**  Yes.

16      **PRESIDING COMMISSIONER PEREZ:**  So the

17  program you'd be going to is in Oakland?

18      **INMATE MCCORMICK:**  Right.

19      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Very

20  good.  Sir, at this time we'd like to provide

21  you the opportunity to make a statement as to

22  why you feel you are suitable parole.

23      **INMATE MCCORMICK:**  Well, I guess I've done

24  22 years.  I've pretty much, you know, I was a

25  idiot when I first came in.  I'm not going to

26  lie about it.  I got into some things I

27  shouldn't of gone into, and I have a habit of

64

1   speaking what's on my mind, hence the last one -

2   - 128 that I received.  But all in all, I know

3   what I did was wrong, and there's no way that I

4   can change that.  If I could, I certainly would.

5   And thinking about it afterwards, there's a

6   whole lot of things I could of done differently,

7   but at that time, I did what I did, and I accept

8   full responsibility.  Now as far as me -- why I

9   should get out, now I got photo albums full of

10  reasons why, but most of all, I've earned it.

11  I've done my time, and I need to get out there,

12  be with my family.  That's about it.

13          **PRESIDING COMMISSIONER PEREZ**:  Okay.  Thank

14  you, sir.  We will now recess for deliberations.

15  The time is 5:10 p.m.

16                    **R E C E S S**

17                     --oOo--

18

19

20

21

22

23

24

25

26

27

65

1      **CALIFORNIA BOARD OF PAROLE HEARINGS**

2              **D E C I S I O N**

3      **PRESIDING COMMISSIONER PEREZ:**  We have

4   received all the information received from the

5   public and relied on the following circumstances

6   in concluding that you are not suitable for

7   parole and that would pose an unreasonable risk

8   of danger to society or a threat to public

9   safety if released from prison at this time.

10  Sir, let me back up for just one moment and just

11  let me know that we are going to deny you for

12  one year.

13      **INMATE MCCORMICK:**  Uh-huh.

14      **PRESIDING COMMISSIONER PEREZ:**  The main

15  factor, or one of the main factors, is the

16  gravity of the offense, in that after reviewing

17  the facts of this crime, it is the opinion of

18  this Panel that the offense was carried out in a

19  especially cruel and callous manner, in that the

20  unarmed victim was shot at close range at torso

21  piercing his aorta resulting in his almost

22  immediate demise, and that according to the

23  autopsy, he died within minutes of having been

24  shot.  In addition, sir, the motive for this

25  crime was very trivial in relationship to the

26  offense, in that it appears to have been

27  **FRANK MCCORMICK C-78307 DECISION PAGE 1 11/14/05**

66

1    committed as a result of a argument between

2    other individuals that really didn't involve

3    you.  Furthermore, sir, this particular crime

4    created the potential for additional victims, in

5    that there was another individual in the vehicle

6    at the time of the offense.  Sir, these

7    conclusions are drawn from the statement of

8    facts, wherein according to the record, the

9    murder victim was killed in the parking lot of

10   the Seasider Club on August 8th, 1983, at

11   approximately 11:00 p.m.  The cause of death was

12   a gunshot wound to the heart.  An investigation

13   led police to information indicating that

14   yourself and Alfred Johnson Jr. went to the

15   Seasider parking lot.  Johnson approached the

16   passenger side of the auto occupied by Stephen

17   Edwards and Alvin Brooks.  McCormick approached

18   the driver's side and a verbal dispute erupted

19   between Johnson and Edwards.  McCormick pulled

20   out a handgun, which he pointed at Brooks.  The

21   dispute between Edwards and Johnson grew heated,

22   a shot was fired and Edwards was struck when the

23   bullet from the -- from McCormick's weapon.

24   McCormick and Johnson fled the scene in an auto

25   later traced to McCormick's residence.

26   Furthermore, sir, the record does not reflect

27   **FRANK MCCORMICK C-78307 DECISION PAGE 2 11/14/05**

67

1    that at the time of the offense that you did

2    anything to aide this particular victim.  The

3    other factor that we looked at is denying you

4    for one year, sir, is that at the time you

5    committed the offense you were approximately 31

6    years of age and you had a very minimal criminal

7    history, in that you only had, according to the

8    rap sheet, a misdemeanor conviction for

9    disturbing the peace.  There is nothing in the

10   record to substantiate that you've previously

11   been convicted of gambling.  Furthermore, we do

12   note that at the time you committed the offense

13   you were on active duty.  Is that correct, sir?

14   Active duty in the U.S. Army?  We took into

15   consideration as well the latest psychological

16   report, sir, that is favorable.  This particular

17   report is authored by staff psychologist William

18   Gamard, G-A-M-A-R-D, dated August 29th, 2003, in

19   which the psychologist indicates that if

20   released to the community he believes that your

21   violence potential is estimated to be no higher

22   than the average citizen in the community.  In

23   terms of your parole plans, sir, I do note for

24   the record that you have very good parole plans.

25   There is no requirement that you parole to your

26   county of last legal residence, and quite

27   **FRANK MCCORMICK C-78307 DECISION PAGE 3 11/14/05**

68

1   frankly, you can parole somewhere else and you

2   think there is a better opportunity for you to

3   do better in a different community, we certainly

4   would encourage it.  And we do note for the

5   record that it is your plan to parole into a

6   residential treatment program.  We do have a

7   letter verifying that, to the effect, in the

8   Oakland area, and then it is your plan to live

9   with your ex-wife in the Sacramento area after

10  completing this six-month program.  In addition,

11  although there's not a specific job offer, we do

12  note for the record that you have a number of

13  marketable skills that you would be able to

14  utilize upon your release to parole,

15  specifically in the area of dry cleaning, small

16  business machines, as well as a furniture

17  assembler.  Further, we do note for the record

18  that you've provided to this Panel today, sir,

19  information which indicates that you have been

20  very active in trying to obtain information

21  regarding employment resources that would assist

22  you in obtaining employment upon your release to

23  parole, and that's very commendable, sir.  Sir,

24  the other factor that we did take into

25  consideration is the fact that between 1984 and

26  1998 you have incurred some 115s, and you've not

27  **FRANK MCCORMICK C-78307 DECISION PAGE 4 11/14/05**

69

1    incurred any 115s since that time period.  You

2    did incur a 128 in 1999, but we don't weigh that

3    in making our decision.  We take into

4    consideration the 115s and it is the opinion of

5    this Panel, sir, that you must be able to

6    demonstrate that you can go a longer period of

7    time with no 115s before you can be found

8    suitable for parole, in that from 1984 to 1998

9    you were incurring 115s.  That's a 15-year

10   period, and you've now gone six years without

11   any 115s.  Again, you must be able to

12   demonstrate to the Panel that you can go an

13   extended period of time without receiving any

14   115s, and that's the reason we gave you the one-

15   year denial as opposed to a denial that's any

16   longer than that.  Furthermore, sir, we would

17   like to commend you for not having received any

18   115s since 1998, and also for the Inmate

19   Employability Program laudatory chrono that you

20   received this year, as well as other laudatory

21   chrono in your file, as well as for completing a

22   variety of FEMA courses, and for your

23   participation in AA.  However, these positive

24   aspects of your behavior do not outweigh your

25   factors of unsuitability, and as a result we're

26   going to deny you for one year.  Sir, your most

27   **FRANK MCCORMICK C-78307 DECISION PAGE 5 11/14/05**

70

1  psychological report is favorable.  However,

2  when you come before the Board the next time

3  around, I would venture to say that if you

4  continue doing what you've been doing, in terms

5  of your program, you'll probably receive another

6  favorable psychological report, so the Panel

7  will have not only a recent one but a 2003

8  positive psychological report to consider during

9  your next consideration hearing, so as a result,

10  we're going to ask for another psychological

11  evaluation.  We're going to ask the psychologist

12  to, again, determine your violence potential in

13  the free community, as well as the significance

14  of alcohol as it relates to your commitment

15  offense and your ability to refrain from using

16  that substance because, most likely than not, if

17  you are found suitable for parole, what will

18  happen is the Panel will probably give you a

19  condition that you cannot use alcohol since you

20  had been using alcohol at the time of the

21  offense, and also to explore to what extent

22  you've come to terms with the underlying cause

23  of the commitment offense.  Again, that will be

24  an opportunity for you to make another favorable

25  impression on another psychologist and have two

26  psychological reports that are favorable when

27  **FRANK MCCORMICK C-78307 DECISION PAGE 6 11/14/05**

71

1  you come before the Board the next time around.

2  In the meantime, sir, we recommend that you

3  continue with your programming, in that you

4  continue remaining disciplinary free.  Please do

5  not get any more 115s or 128s.  That's what's

6  going to set you back, and I'm sure you are

7  aware of that.  Those 115s set you back because

8  the thought is that if you can't follow the

9  rules within the institutions, that you're not

10  going to follow them in the community.

11  Absolutely do not receive any more 115, and if

12  there any self-help or therapy programs

13  available in the institutions, take advantage of

14  them, and complete them as well.  Okay.

15      **INMATE MCCORMICK:**  Yes, ma'am.

16      **PRESIDING COMMISSIONER PEREZ:**  Sir, we do

17  wish you the best of luck.  This concludes this

18  hearing.  The time is 5:40 p.m.  Good luck, sir.

19      **INMATE MCCORMICK:**  All right.

20      **ATTORNEY FOX:**  Thank you.

21                    --oOo--

22

23  **PAROLE DENIED ONE YEAR**

24  **THIS DECISION WILL BE FINAL ON: <u>Mar. 14, 2006</u>**

25  **YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT**

26  **DATE, THE DECISION IS MODIFIED.**

27  **FRANK MCCORMICK C-78307 DECISION PAGE 7 11/14/05**

72

CERTIFICATE AND
DECLARATION OF TRANSCRIBER


I, STACY WEGNER, a duly designated transcriber,

PETERS SHORTHAND REPORTING, do hereby declare and

certify under penalty of perjury that I have

transcribed tape(s) which total one in number and

cover a total of pages numbered 1 - 71, and which

recording was duly recorded at CORRECTIONAL TRAINING

FACILITY, SOLEDAD, CALIFORNIA, in the matter of the

SUBSEQUENT PAROLE CONSIDERATION HEARING OF FRANK

MCCORMICK, CDC NO. C-78307, ON NOVEMBER 14, 2005, and

that the foregoing pages constitute a true, complete,

and accurate transcription of the aforementioned tape

to the best of my ability.

I hereby certify that I am a disinterested

party in the above-mentioned matter and have no

interest in the outcome of the hearing.

Dated November 28, 2005, at Sacramento,

California.



STACY WEGNER
TRANSCRIBER
**PETERS SHORTHAND REPORTING**