# EXHIBIT E

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

OCT 0 6 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

In re                                        )   Case No.: HC 5337
                                             )
     Frank McCormick (C-78307)         )   ORDER
                                             )
              On Habeas Corpus.  )
_____)

       Petitioner contends that the Board of Prison Terms deprived him of a federally

protected liberty interest by refusing to find him suitable for parole at his November 14, 2005

parole suitability hearing.  Specifically, Petitioner alleges that the Board improperly based its

unsuitability finding on Petitioner's commitment offense, and certain unchanging facts of the

crime.  He believes the denial was not based on reliable evidence, and that it was egregious for

the Board to recommend what course of conduct Petitioner should follow in order to be found

suitable for parole in that Petitioner was already performing those recommended actions.

       A parole board's decision to deny parole is subject to judicial deference and may only

be reversed where it is not supported by "some evidence." *In re Rosenkrantz* (2002) 29 Cal.4th

616, 652.  The Board's findings need only be supported by "a modicum of evidence," and the

Board is granted discretion to weigh the evidence and resolve any conflicts therein.  *In re*

*Cortinas* (2004) 120 Cal.App.4th 1153, 1166.  The Board may properly find an inmate

unsuitable for parole based on the circumstances of the offense if the violence or nature of the

crime is "more than the minimum necessary to convict him of the offense for which he is

confined.  *In re Dannenberg* (2005) 34 Cal.4th 1061, 1095. So long as there is "some evidence"

in support of the Board's findings, a court must uphold the decision. *In re Cortinas, supra,* 120

Cal.App.4th at 1166.

1    The Court has reviewed the hearing transcripts appended to the petition, and all

2    documentary support. It appears that, contrary to Petitioner's assertions, the Board's decision

3    to deny parole for a period of one year was supported by "some evidence." The Board

4    considered evidence that Petitioner shot the victim at close range while the victim was seated in

5    a parked car with a dead battery. At the same time, Petitioner's friend was engaged in a heated

6    discussion with his boss, with whom he had earlier been arguing, who was seated in the parked

7    car with the victim. Petitioner apparently believed his friend's boss was going to pull a gun on

8    them, so Petitioner fired a fatal shot in his direction. Petitioner did not render any assistance to

9    his victim. Instead, he and his friend fled the scene and parked out of view behind Petitioner's

10    residence.

11    The Board found that the shooting was carried out in an especially cruel and callous

12    manner, and that the motive for the crime was very trivial in relationship to the offense in that

13    it was committed as a result of an argument that didn't involve the petitioner. Moreover, the

14    crime created the potential for additional victims, including the occupant sitting in the driver's

15    seat.

16    The Board further based its decision on the fact that Petitioner had accumulated seven

17    RVR-115 rules violation reports over a span of years. The Board noted that it had been six

18    years since Petitioner had received an RVR-115, but wanted to see at least one additional year

19    of good behavior before making a finding that Petitioner would be able to follow the rules of

20    society on parole. The Board expressed its desire to explore the extent to which Petitioner had

21    come to terms with the commitment offense, and to review at least one additional

22    psychological evaluation before recommending parole. Indeed, the two psychological reports

23    in Petitioner's file did not state that he no longer posed a threat of danger to the community, but

24    only that his risk was not higher than average. The Board additionally indicated that it would

25    ask the psychologist to determine the significance of alcohol with respect to Petitioner's

1 | potential for violence, as that issue had apparently not been adequately considered by the staff

2 | psychologist.

3 |     On review of the evidence before the Court, it appears that the Board's decision was

4 | based in large part on its determination that Petitioner had not remained disciplinary free for a

5 | sufficient length of time during his period of incarceration. The Presiding Commissioner's

6 | closing remarks to Petitioner were as follows:

7 |     "Please do not get any more 115s or 128s. That's what's going to set you back, and I'm
sure you are aware of that. Those 115s set you back because the thought is that if you

8 | can't follow the rules within the institution, that you're not going to follow them in the
community. Absolutely do not receive any more 115s, and if there [are] any self-help

9 | or therapy programs available in the institutions, take advantage of theme, and complete

10 | them as well. Okay."

11 | Transcript of Decision, pg. 7, 11/14/05.

12 |     Petitioner may take umbrage with being reminded to remain discipline free and

13 | participate in institutional programs, but his Court disagrees that the Board's suggestions were

14 | "egregious" in nature, as Petitioner suggests. Moreover, the decision was not solely based

15 | upon the nature of the commitment offense, or unchanging factors, but was based upon the

16 | Board's determination that more evidence was needed with respect to the following matters:

17 | Petitioner's willingness and ability to accept responsibility for his crime, to participate in self-

18 | help or therapy programs, and to remain disciplinary free. Additionally, the Board found it

19 | necessary to review a psychiatric report based, in part, on matters not then available for the

20 | Board's consideration.

21 |     Based upon the foregoing, there is "some evidence" in the record supporting the

22 | Board's decision, and the decision must be upheld by this Court. Accordingly, the petition is

23 | DENIED.

24 |     / / /

25 |     / / /

1    IT IS SO ORDERED.

2    Dated:  10\6\06

3                                                 _____
                                                 Hon. Marla O. Anderson
4                                                 Judge of the Superior Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## CERTIFICATE OF MAILING

2

### C.C.P. SEC. 1013a

3        I do hereby certify that I am not a party to the within stated cause and that on

4    October 10, 2006 I deposited true and correct copies of the following document:

5    ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

6    California, directed to each of the following named persons at their respective addresses as

7    hereinafter set forth:

8    Frank McCormick (C-78307)

9    CTF, East Dorm, 148L
     P.O. Box 689

10   Soledad, CA 93960-0689

11   Office of the Attorney General
     455 Golden Gate Ave., Suite 11000

12   San Francisco, CA 94102
     Attn: Correctional Law Section

13

14   Pam Ham, DDA
     Office of the District Attorney

15   240 Church St., Rm. 101
     Salinas, CA 93901

16   *Via interoffice mail*

17   Dated: October 10, 2006              LISA M. GALDOS,
                                          Clerk of the Court

18

19                                       By: _____

20                                             Deputy

21

22

23

24

25

Name    Frank McCormick

Address    Correctional Training Facility

           P.O. Box 689 / East Dorm 148-Low

           Soledad, CA.93960-0689

CDC or ID Number    C-78307

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY
(Court)

FRANK McCORMICK
Petitioner

vs.

A.P.Kane, Warden(A)
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No _____

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Penal Code, § 1473 et seq.
Cal. Rules of Court, rules 56.5, 201(h)

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

DUE PROCESS VIOLATION BY THE BOARD OF PRISON TERMS

(see attached Writ of Habeas Corpus)

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(see attached Writ of Habeas Corpus)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(see attached Writ of Habeas Corpus)

# TABLE OF CONTENTS

PAGES

Index                                                                    i

Points and Authorities                                                   ii,iii

Statement of Facts                                                       1

      Commitment Offense                   1

      Social History                       3

      Advances During Incarceration        4

Ground One                                                               6

THE BOARD FINDING OF UNSUITABILITY AND REFUSAL OF THE GRANTING OF PAROLE VIOLATED THE PETITIONER'S RIGHT TO DUE PROCESS AND DEPRIVED HIM OF HIS FEDERALLY PROTECTED LIBERTY INTEREST WHEN THE BOARD DENIED PETITIONER A PAROLE GRANT WITHOUT ANY RELIABLE EVIDENCE OR "SOME EVIDENCE", IN VIOLATION OF THE 5TH AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Ground Two                                                               12

THE BOARD VIOLATES DUE PROCESS BY REPEATEDLY RELYING ON THE UNCHANGING FACTS OF THE CRIME IN THE FACE OF CLEAR EVIDENCE OF REHABILITATION, & BY MAKING RECOMMENDATIONS OF WHAT TO DO TO BE FOUND SUITABLE AT EACH HEARING. A FINDING OF EGREGIOUSNESS IS BARRED BY THE INMATE'S COMPLIANCE WITH THOSE AGREED TERMS.

Prayer For Relief                                                        21

## POINTS AND AUTHORITIES

CITATIONS                                                        PAGES

Biggs v. Terhune,
    (9th Cir. 2003) 334 F.3d, 910, 915-916,...7,11,12,13,14,15,16,17,20

In Re Ramirez,
    (2001) 94 Cal.App. 4th, 549, at 564-565,..................9,12,14,16

Edwards v. Balisok,
    (1997) 520 U.S. 641, at 648.........................................9

In re Caswell,
    92 Cal.App. 4th 1017, 1029..........................................9

People v. Dubon,
    90 Cal.App. 4th, 949, 952, (2001)...................................9

Charlton v. Federal Trade Comm.
    543 F.2d, 903-907, 908 (D.C. Cir. 1976)............................10

McQuillion v. Duncan,
    306 F.3d, 901-902, (9th Cir. 2002)..............................11,19

In re Smith,
    109 Cal.App. 4th 489 (2003)........................................11

U.S. v Guagliardo,
    275 F.3d, 868-872 (9th Cir. 2002)...............................12,13

Graynet v. City of Rockford,
    408 U.S. 104, 108-109 (1972)....................................12,13

Irons v. Warden,
    358 F.Supp.2d 936 (E.D. Cal. 2005)..........................14,15,17

In re Minnis,
    (1972) 7 Cal.3d 639, 643....................................17,18,19

People v. Morse,
    (1964) 60 Cal.2d, 631, 643.........................................18

Williams v. State of New York,
    (1949) 337 U.S. 241, 247...........................................18

In re Rosenkrantz,
    (2002) 29 Cal. 4th, 616, 656....................................18,19

Board of Pardons v. Allen,
    (1987) 482 U.S. 369, 376-78.....................................19,20

Greenholtz v. Inmates of Neb. Penal & Correctional Complex,
    (1979) 442 U.S. 1, 11-12........................................19,20

## POINTS AND AUTHORITIES (continued)

Titles                                                                    Pages

California Constitution
  Article V, Section 8(b)..............................................19

_____

Evidence Code,
  §115.................................................................10

_____

Penal Code,
  §3041..................................................6,8,11,14,15,19
  §3041(a)..............................................................6,15
  §3041(b)..............................................................6,11

_____

California Code of Regulations,
  Division 2, §2402......................................................6,7
  Division 2, §2402(a)...................................................11
  Division 2, §2000(b)(49)................................................8
  Division 2, §1000(b)(62)(90)............................................9

_____

Exhibits
          "A", Abstract of Judgement
          "B", Legal Status/Probation Report
          "C", Board Decisions
          "D", Psych Evaluations
          "E", Counselor's Reports
          "F", Time Calculation Worksheet

1    ### STATEMENT OF FACTS

2    COMMITMENT OFFENSE. In the early morning hours of August 10, 1983,

3    police officers arrested Alfred Emanuel "Bubba" Johnson, Jr. and

4    Frank McCormick as suspects in the shooting death of an individual

5    named Stephen Edwards in the parking lot of the Seasider Club a few

6    hours earlier. According to witnesses, Edwards had been sitting in a

7    vehicle with two friends in front of the Seasider Club when Johnson

8    and McCormick pulled into the parking lot. Johnson then approached

9    the passenger side of the car occupied by Edwards while McCormick

10   approached the drivers side. Words were exchanged between Edwards

11   and Johnson and at some point, McCormick pulled out a handgun which

12   he pointed at Alvin Brooks, Edward's companion. The discussion

13   between Edwards and Johnson grew heated until, according to

14   witnesses, a shot rang out and Edwards was struck with a bullet from

15   the gun of Frank McCormick. The suspects then fled the area in a car

16   that was traced to McCormick's residence in Fort Ord. The suspect

17   vehicle, it was later noted by arresting officers, had been parked

18   behind the residence in a manner which concealed it from the street.

19       Additional witness interviews were conducted at the scene of the

20   crime and one individual, who wished to remain anonymous, advised

21   that after hearing the shot ring out, he observed two Negro males

22   approach an apartment complex from the Seasider and place something

23   under a white Cadillac which was parked at the complex. The caller

24   felt that this might possibly have been a firearm, however, a search

25   of the area by police officers a short time later revealed nothing.

26       A statement was also taken from Alvin Brooks, driver of the

27   vehicle in which Stephen Edwards was sitting at the time he was shot.

28   Brooks indicated that he, Edwards, and another individual had been

-1-

1  drinking some whisky while parked in the Seasider parking lot when
2  Bubba Johnson had driven by in a 280Z. Johnson then proceeded to
3  drive around the block, and, on the third time around, got out of the
4  car. He called out to Edwards, "Get out and come over here and talk."
5  Edwards refused, however, and indicated that he did not wish to be
6  involved with Johnson. Johnson then approached the car and took a
7  swing at Edwards, as Frank McCormick simultaneously came to the
8  driver's side. Upon reaching the door, McCormick produced a handgun
9  and pointed it at Brooks' temple. Brooks attempted to start his car
10 but the battery was dead. McCormick then stated, "Go for it,"
11 indicating that Brooks had a gun. Brooks told McCormick that he had
12 no gun, and at this time he was ordered to remove the keys from the
13 car. As he was doing so, Brooks observed McCormick move the gun and
14 fire one shot. He heard Edwards yell and realized that Edwards had
15 been hit. Just before the shooting, Johnson had been arguing with
16 Edwards about Edwaards carrying a knife. After the shot, McCormick
17 and Johnson left the area immediately.

18 Regarding the cause of the dispute between Bubba Johnson and
19 Stephen Edwards, several witnesses indicated that approximately tow
20 days before, the two had exchanged words at the Seasider Club. Among
21 other things, Edwards had called Johnson a "rapist", an appellation
22 which particularly perturbed Johnson as he had served time in prison
23 on rape charges. A fight ensued, the police were called, and Bubba
24 Johnson was maced and taken to the Seaside Police Station. No charges
25 were filed, however.

26 At approximately 6:30am, on August 10th, Frank McCormick
27 volunteered a statement regarding his involvement in the listed
28 offense. He related that Johnson and himself had been at the Seasider

1  around 3:00 or 4:00pm the previous afternoon, but had not gone back
2  later that evening. When confronted with the fact that several
3  witnesses had seen Johnson and himself in the parking lot later that
4  evening, McCormick said that he was heavily intoxicated and couldn't
5  say for sure that the two hadn't stopped by. In a later interview, in
6  fact, McCormick admitted that the two had approached Stephen Edwards
7  in the Seasider parking lot later that evening. McCormick added that
8  at the time of the shooting, Edwards was reaching under the seat for
9  what he and Johnson thought was a gun. McCormick stated Johnson had
10  intended to straighten things out with Edwards after what happened
11  the other night. Edwards, however, had pulled a knife which Johnson
12  had taken away from him. It was then that Edwards began reaching
13  under his seat. According to McCormick, the victim stated, "I'll kill
14  both you motherfuckers." McCormick then fired a shot, in what he
15  claimed was an attempt to hit the seat. He wasn't sure that he'd hit
16  Edwards at this time. McCormick then proceeded home with the murder
17  weapon still in his possession. It was later recovered by police
18  during the search of his residence.

19

20  SOCIAL HISTORY. Petitioner now 54 years old, entered prison at the
21  age of 32. Petitioner was sentenced to a term of 15 Years to Life,
22  plus 2 years for a gun enhancement. He was received by the Department
23  of Corrections on December 22, 1983. The Department of Corrections
24  determined petitioner's Minimum Eligible Parole Date (MEPD), to be
25  May 14, 1993. (see Exhibit "F"). Petitioner's Initial Considering
26  hearing was April 28, 1992. Petitioner has since had subsequent
27  parole consideration hearings on March 23, 1994, March 29, 1995, June
28  24, 1996, June 18, 1997, July 7, 1998, December 13, 1999, May 15,

1  2000, October 31, 2001, September 25, 2002, November 3, 2003, April
2  6, 2004, and November 14, 2005. At each and every hearing petitioner
3  was found unsuitable for parole. The Board of Prison Terms cited as
4  reasons for unsuitability the unchanging factors of the commitment
5  offense and factors unsupported by statute or regulation, making ad
6  hoc rationalizations in search of justification. Finally, the Board
7  of Prison Terms denies parole to petitioner by re-characterizing the
8  commitment offense in terms of a First Degree Murder, such as
9  "especially cruel and callous," "multiple victims," trivial and
10 inexplicable. This violates petitioner's Second Degree Murder
11 conviction when, as is the case here, the BPT extends the punishment
12 of petitioner beyond the uniform terms of punishment indicated by CCR
13 15, §2403(c). It is the November 14, 2005 decision by the BPT to deny
14 parole that is the foundation of stated claims herein. (see Exhibit
15 "C").

16

17 ADVANCES DURING INCARCERATION. Petitioner admits his responsibility
18 for the commitment offense and his continually expressed remorse for
19 his actions and it's impact on the victims. (see Exhibit "D", BPT
20 Psych. Evaluation).

21     Petitioner has remained disciplinary free for 7 years, has
22 repeatedly participated in rehabilitation programming during his 23
23 years of incarceration. He has achieved, earned or received:    High
24 School Diploma, 1.5 years of College, Forklift Driver, Personal
25 Reliability Program (PRP), Teacher's Aide, Small Engines, 2-Stroke
26 and 4-Stroke Engines, Boat engines, Inboard and Outboard, Jet Boat
27 Engines and Drives, Motorcycles, Dry Cleaning, Processessing Orders,
28 Material Identification, Sorting, Spotting, Machine Operation, Dry

1 Cleaners, Washer, Dryer, Pressing, Steaming, was M.A.C. Chairman, and

2 participated in the following fund-raisers, Friends Outside,

3 Children's Christmas Festival, Seaside Boy's and Girl's Club, Salinas

4 Boy's and Girl's Club, Battered Woman's Shelter, Monterey County,

5 Coats for the Needy, Monterey County, and participated in a F.E.M.A.

6 program receiving Certificates in Emergency Preparedness, Animals in

7 disaster, Awareness and Preparedness, Animals in Disaster, Community

8 Planning, Leadership and Influence and Effective Communication.

9     Petitioner has several highly supportive psych report

10 evaluations finding in pertinent part (see Exhibit "D"), "If released

11 to the community, his violence potential is estimated to be "no

12 higher than the average citizen in the community." McCormick has

13 viable parole plans, support from family and friends, and has

14 marketable skills. (see Exhibit"E"). Petitioner's only criminal

15 background consists of a single misdemeanor conviction for disturbing

16 the peace, an act that does not include behavior necessary to support

17 a parole denial. Ignoring these facts, demonstrating he has

18 rehabilitated himself, the Board arbitrarily found petitioner

19 unsuitable for parole, denying him for 1 year based on the gravity of

20 his commitment offense.

21 ///
///
22 ///
///

23

24

25

26

27

28

GROUND ONE.

> THE BOARD FINDING OF UNSUITABILITY AND
> REFUSAL OF THE GRANTING OF PAROLE VIOLATED
> THE PETITIONER'S RIGHT TO DUE PROCESS AND
> DEPRIVED HIM OF HIS FEDERALLY PROTECTED
> LIBERTY INTEREST WHEN THE BOARD DENIED
> PETITIONER A PAROLE GRANT WITHOUT ANY
> RELIABLE EVIDENCE OR "SOME EVIDENCE," IN
> VIOLATION OF THE 5TH AND 14TH AMENDMENT OF
> THE UNITED STATES CONSTITUTION.

Section 3041 of the California Penal Code creates substantial presumption that a parole release date shall be set at the initial parole hearings, and, in a manner that is uniform to other similar offenses. Subdivision (a), and, Subdivision (b), of Section 3041 mandates that a parole release date "shall" be set "unless" the Board (BPT) finds that the gravity of the commitment offense or offenses, or, the timing and gravity of past convicted offenses are such that a consideration of the public safety warrant not setting a release date at that hearing. There is no other criteria in the statute for denying parole to a prisoner. It appears from the language that "consideration of the public safety" is nonetheless limited to the gravity of the offense and/or the timing and gravity of any past "convicted" offense or offenses. The statute does not encompass or authorize some of the criteria set forth by the Cal. Code of Regulations, Title 15, Section 2402. It does appear that the statute has been enlarged to include additional criteria not expressly authorized by the statute.

Notwithstanding, the argument set forth in the petition is not merely an argument about a state law violation. The presumption vested by the statue is substantial, while the statutory criteria the Board must meet in order to deny parole is limited to criminal conduct at the time of the offense. For the Board to interpret the

-6-

1 statute in such a manner as to deny parole solely the commitment

2 offense after the Board has denied petitioner on the exact same point

3 (13) times, deprives petitioner of a substantial liberty interest

4 protected by Federal Due Process. (see Biggs, at 334 F.3d 917). The

5 effect of such an interpretation, established by practice,is to

6 subject all prisoners to proforma decisions, where the Board goes

7 through the motion of due process review, citing post hoc

8 rationalizations to justify the parole denial, that is now always the

9 result. This is little different than a decision to deny parole made

10 without any evidence to support it. Thus, by misinterpretation,

11 whether inadvertently or intentionally, the result is not merely a

12 violation because it is an action the Board is simply not authorized

13 to take by the enabling statue that impinges on Federally protected

14 liberty interests. Petitioner relies on this claim which is now

15 brought before the State Court.

16     A.   THE BOARD DID NOT MEET THE BURDEN OF PROOF THAT
PETITIONER POSES AN "UNREASONABLE RISK" OF

17         THREAT TO PUBLIC SAFETY IF RELEASED ON PAROLE.
THE DECISION WAS WITHOUT EVIDENCE AND WAS

18         ARBITRARY AND CAPRICIOUS VIOLATING FUNDAMENTAL
DUE PROCESS.

19     The regulatory law requires the Board to set a release date

20 unless if finds that the prisoner poses an "unreasonable risk" to

21 public safety if released at that time, 15 CCR, 2402. This is

22 consistent with the enabling statue, which requires the setting of a

23 release date.

24     If the preponderate record before the Board demonstrates that

25 petitioner does not pose the "unreasonable risk" (which the record

26 show that he does not, from petitioner's last (13) parole hearings), a

27 release date must be set.

28     If the Board denies petitioner parole without making this

-7-

1  requisite finding based on relevant and credible facts in the record,
2  then this is not merely a state law violation, but, a deprivation of
3  the substantial liberty interest he has in obtaining a release date.
4  Failure of the Board to act in accord with the regulations, in such
5  situations, constitutes a substantive due process violation because
6  it constitutes an abuse of discretion that unfairly and inaccurately
7  deprives the prisoner of his right to that Federally protected
8  liberty interest. The Board needs more than "some evidence" to arrive
9  at their decision, even though once the decision is made, the
10 reviewing court needs only to find "some evidence" to support the
11 decision or findings that were made. As petitioner will point out,
12 the "some evidence" standard is not a "burden of proof" - although
13 the Board or Prison Terms and the Governor seems to think it is.
14 Petitioner will demonstrate by clear and convincing facts that the
15 Board's burden of proof is the "preponderance of evidence" standard,
16 but, they totally ignore this in arriving at their post hoc
17 rationalization to deny parole in nearly every case. There must be a
18 weighing and balancing process according to a burden of proof.

19      Thus, petitioner alleges that the Board's decision in his case
20 exceeded the bounds of "review" and was made without the procedural
21 safeguards required by the Constitution, and, without applying the
22 proper proof necessary to overcome the presumptive right to release
23 delineated in Penal Code, Sectionn 3041.

24      Statutory law in California applies the "rock bottom" burden of
25 proof in judicatory proceedings as the "preponderance of evidence"
26 level. (Evidence code, Section 115). The Board of Prison Terms list
27 under "Good Cause," The preponderance evidence (15 CCR, Division 2,
28 Section 2000(b)(49), and, also lists "relevant" and "material"

-8-

1  evidence as the standard for being valid "evidence." (15 CCR. Div. 2,

2  Section 1000(b)(62)(material evidence), and, (90)(relevant evidence).

3  The "good cause" provision is a requirement for decision making that

4  applies to all substantive decisions. These regulatory and statutory

5  provisions initiate the weigh and balancing process of evidence at

6  parole hearings. A responsibility the Board must undertake. The Board

7  cannot apply the "some evidence" standard because is is not a burden

8  of proof. (In re Ramirez, (2001) 94 Cal.App. 4th, 549 at 564-565;

9  Edwards v. Balisok, (1997) 520 U.S. 641, at 648). The "some evidence"

10 applies only to questions of evidentiary sufficiency as an

11 "additional requirement of due process, not substituted for other due

12 process requirements."(Ibid.). The "some evidence" standard is

13 applied only by the reviewing court to determine if the Board's

14 (Governor's) decision is supported by "some evidence," if the court

15 finds the Board complied with all other requisite due process

16 requirements. If the Board failed to apply a critical element in the

17 weighing and balancing of evidence, such as a burden of proof, then

18 the court cannot deny the petition because there isn't "some

19 evidence" in the record to support the decision. As the Appellate

20 Court in In re Caswell, 92 Call.App. 4th, 1017, 1029, pointed out,

21 there is always some evidence in the record of unsuitability of

22 parole, which, if invoked, would subject every consideration of

23 parole to an arbitrary standard or political whim, but, for a burden

24 of proof, and the burden of producing evidence, is clearly in

25 California law, e.g., People v. Dubon, 90 Cal. App. 4th, 949, 952

26 (2001), and, applies to all state agencies.

27      Here, where the statute presumes that a parole date "shall

28 normally" be set, the Board must, in their weighing and balancing of

-9-

1  all relevant, material, and, reliable evidence, present by a

2  preponderance of that evidence, a "rational connection" between the

3  basic facts the Board is asserting as sufficient to deny parole, and,

4  the ultimate fact statutorily presumed, i.e., that the prisoner is

5  more than likely not "suitable" for setting a parole release date.

6      Petitioner submits that the Board and the Governor have broad

7  discretion in parole matter, but, the requirement of procedural due

8  process embodied in the California Constitution ... places some

9  limitations upon these discretionary powers.

10     As heretofore shown, the Board's burden of proof is the

11  preponderance of relevant and material evidence standard. This is the

12  "rock bottom" standard allowed by California law. (Evidence Code,

13  Section 115; see e.g., <u>Charlton v. Federal Trade Comm.</u>, 543 F.2d,

14  903-907, 908 (D.C. Cir. 1976)(Speaking to this standard being "rock

15  bottom" burden of proof). "Good Cause" is defined in the BPT's

16  regulations as "a finding by the Board based upon a preponderance of

17  the (material and relevant) evidence that there is a factual basis

18  and good reason for the decison made. (Ibid. 2000). Here, in

19  petitioner's case, the Board, based on the "material and relevant"

20  evidence, found petitioner unsuitable for parole solely on the basis

21  of the commitment offense which petitioner has been denied (13) times

22  based primarily on the same issue, i.e., unchanging factors,

23  (commitment offense). This is a clear due process violation and

24  especially where the relevant and reliable evidence concerning public

25  safety, i.e., petitioner's psych report that was presented at

26  petitioner's ( 12 ) subsequent parole consideration hearing (in

27  relevant part), "If released to the Community, his violence potential

28  would be considered to be somewhat below average relative to the

average citizen in the community," shows that petitioner does <u>not</u> pose an "<u>unreasonable risk</u>" to the public if released at this time.

The mandatory language in Section 3041 of the Penal Code, established a rebuttable presumption affecting the Board's burden of producing evidence and the burden of proof implementing public policy regarding the parole of term to "life" prisoners.

Petitioner asserts that the ultimate facts sought is a determination whether the prisoner is currently an "<u>unreasonable risk</u>" of danger to the public safety if released on parole. (Subd. (b), 3041, Penal Code; 15 CCR., Section 2402(a)).

The presumption created by mandatory language in both subdivision (a) and (b) of Section 3041 is that petitioner "shall normally" have a parole release date set "unless" the presemption is overcome by the Board which carries the burden of proof as to the existence of the presumed fact. <u>McQuillion v. Duncan</u>, 306, F.3d., 901-902 (9th Cir. 2002); <u>Biggs v. Terhune</u>, 334 F.3d., 910, 916-917 (9th Cir. 2003)(regarding the presumption in Penal Code, Section 3041). If the Board cannot produce the evidence according to the burden of proof required, then the presumption stands, and, the court is obliged to uphold the presumption, and, under <u>In re Smith</u>, 109 Cal.App. 4th, 489 (2003), must order petitioner released from custody.

///
///
///

GROUND 2 :

> THE BOARD VIOLATES DUE PROCESS BY REPEATEDLY
> RELYING ON THE UNCHANGING FACTS OF THE CRIME IN
> THE FACE OF CLEAR EVIDENCE OF REHABILITATION, &
> BY MAKING RECOMMENDATIONS OF WHAT TO DO TO BE
> FOUND SUITABLE AT EACH HEARING. A FINDING OF
> EGREGIOUSNESS IS BARRED BY THE INMATE'S
> COMPLIANCE WITH THOSE AGREED TERMS.

When the Board repeatedly relies on the unchanging facts of the crime to deny parole, in the face of clear evidence that the inmate has been rehabilitated, due process is violated. (Biggs, supra, at 915-916, Ramirez, supra, at 571). However, here, the Board goes a step further. At the conclusion of each hearing attended by petitioner, the Board gave him a series of recommendations of what to do in order to be found suitable for parole. If the crime was going to continue to be an impediment to parole, then what difference would it make whether petitioner followed those recommendations, since parole would be denied in any event as the crime will never change? How could the Board make those recommendations in good faith if the crime was such that parole was not going to occur no matter how well petitioner programs? Even worse, if he complies with those recommendations and the Board gives him a parole date, if the Governor is permitted to effectively negate this whole process unilaterally taking that parole date away, then the recommendations and compliance are rendered useless acts.

The Board has a duty to make all recommendations "sufficiently clear" to inform petitioner what conduct will result in a grant of parole. (U.S. v. Guagliardo, 275 F.3d 868-872, (9th Cir. 2002)[citing Graynet v. City of Rockford, 408 U.S. 104, 108-109, (1972)]).[1]  Thus,

---

[1] A prisoner's due process rights are violated if parole conditions are not made "sufficiently clear" so as to inform him of what conduct will result in his being returned to prison. Likewise, the Board of Prison Terms has a duty to make

1  the onus is on the board to clearly and specifically state what
2  conduct will warrant a finding suitability. Therefore, it follows
3  that there is only one way to interpret the recommendations given to
4  petitioner at the Documentation Hearings ad at each of the Subsequent
5  parole hearings. They constitute the Board's "clear instructions" as
6  to what petitioner must do to be found suitable. As stated, it is
7  indisputable but that petitioner has complied with every single one
8  of the Board's directives to him, and, thus, the Board must finally
9  find petitioner suitable for release. If the Boards' directions to
10 the inmate are not acknowledged as sincere offers providing
11 legitimate goals for achieving a status of parole suitability, then
12 they are mere "hoops," designed to support elaborate rouse and a
13 further affront to the due process rights of all prisoners who rely
14 upon them.

15      As noted, petitioner sincerely relied upon the recommendation of
16 the prior Board panels, and, he partook to fulfill each one.
17 Petitioner's fulfillment may be recognized through his educational
18 and vocational accomplishments and gains, his ongoing self-help work,
19 and his crime free behavior throughout his nearly (23) years of
20 incarceration. Petitioner has complied with those directives
21 following each and every hearing, and the Board should finally
22 recognize his compliance by granting parole.

23      A.    CONTINUED RELIANCE ON THE UNCHANGING FACTS OF
24            THE CRIME VIOLATES DUE PROCESS.

25      In Biggs v. Terhune, the 9th Circuit held that even if the
26 commitment offense(s) are sufficient to support a denial of parole,

---

27 recommendations for parole eligibility "sufficiently clear" so as to inform the
   inmate of conduct that will wrrant a finding of suitability. (see U.S. v.
28 Guagliardo, supra, 278 F.3d 868).

-13-

the crime alone will not justify repeated denials of parole based

upon considerations of due process. Biggs v. Terhune, supra, 334 F.3d

at 916. The Ramirez, court also acknowledged that there will always

be "some evidence" to support a finding that a prisoner committed

the underlying offense. Those facts alone, however, do not justify

the denial of parole. Thus, while concluding that there was factual

support for the findings as to the crime and priors, the Ramirez

court still found the Board's decision arbitrary since there had been

(7) hearings at that point, (9) years had passed beyond the minimum

term, and, it was 17 years after entering prison, and, all evidence

showed rehabilitation. (Id. at 571). Likewise, as the Biggs court

more recently said, despite the fact that there may remain evidence

to support a finding of egregiousness of the crime:

> "A continued reliance in the future on an
> unchanging factor, the circumstances of the
> offense and conduct prior to imprisonment, runs
> contrary to the rehabilitative goals espoused
> by the prison system and could result in a due
> process violation." (Biggs, supra, at 916-917).

In the recently published case of Irons v. Warden, 358 F.Supp.

2d, 936 (E.D. Cal. 2005), the Federal court has applied the dictates

of Biggs. In Irons, the court found that the Board violated the

prisoner's due process by continuing to rely on the immutable

factors. (e.g., the commitment offense and history prior to

incarceration) to support the denial of parole. In doing so, the

Federal judge there ruled that continuing to rely on those factors

that can never change, such as the commitment offense, where there is

no proof of continuing bad conduct to support a finding of current

threat to the public, offends due process.

In interpreting the rule put forth in Biggs, and, the plain

language of Penal Code §3041, it is clear that even if the crime may

-14-

1  be considered egregious, under federal due process principles, the

2  denial of parole based on the immutable facts of the crime is only

3  authorized at the first parole consideration hearing. The provisions

4  of Penal Code §3041, only talk of the use of the crime to defer

5  setting of a date at the initial hearing. (Penal Code §3041(a)). After

6  that, to give the statute a constitutional interpretation that is not

7  unreasonably vague, further denials would have to be based on some

8  facts arising subsequent to the crime that show a continued

9  propensity for violence, making the inmate a danger to the public.

10  (Biggs v. Terhune, supra, 334 F.3d at 914-915). To rule otherwise

11  would put petitioner in an impossible situation, where no matter what

12  he shows in terms of positive behavior, reformation, self-help, work

13  skills, parole plans, or just rehabilitation in general, he would

14  never be able to overcome the unchanging facts of the crime. The only

15  logical application of Constitutional Due Process dictates what the

16  court in Irons held, i.e., that any subsequent denial requires the

17  presence of some in-prison behavior showing that the inmate currently

18  presents an unreasonable risk of danger if paroled.

19      Here, the facts of the crime have been used as the real reason

20  for denying parole on (13) separate occasions, yet, those facts have

21  never been tied to current behaviors showing petitioner still

22  presents an unreasonable risk of danger to the public at this time. A

23  rule requiring the presence of in-prison, adverse behavior to justify

24  further denials based on the crime simply recognizes what the 9th

25  Circuit in Biggs alluded when it talked of the rehabilitative goals

26  of the system, and, the need to take into consideration that a person

27  can change. At this point, petitioner has been incarcerated for (23.)

28  years, eligible for parole for more than (13) of those years. His

-15-

programming clearly shows his full rehabilitation. In drawing the line as to when further denials become arbitrary, that line has definitely been crossed in this case, and, in fact, was crossed as soon as the crime was used in the second parole hearing without the presence of facts showing a continued risk of danger based on how petitioner was programming in prison. To the contrary, the in-prison facts are exclusively positive.

As the Ramirez court noted, the paroling authority must do more than merely commend petitioner for the hard work done to rehabilitate himself while in prison. They must actually consider these factors "as ... circumstance[s] tending to show his suitability for parole." Ramirez, supra, 94 Cal.App. 4th at 571-572 [emphasis original]. Of course, all the Board did with petitioner's extensive accomplishments was to brush them aside with several terse lines, and, issue a superficial compliments. The Biggs rule is clear that if an inmate continue[s] to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense and prior conduct would raise serious questions involving his liberty interest in parole. Biggs v. Terhune, supra, 334 F.3d at 916. Here, the evidence of actual rehabilitation is beyond dispute.

In comparing the present case with Biggs, it is undeniably clear that the Board lacks any justification whatsoever to continue to deny petitioner a parole date. In Biggs, the inmate was convicted of the premeditated and deliberate 1st Degree Murder of a witness in a major theft case against the defendants, and, yet, the court was quick to caution the Board that it could not continue to solely rely on the commitment offense to deny the inmate parole, even though it was only

1    his initial hearing at that point. Yet, petitioner has been denied

2    parole on (13) separate occasions, each time effectively relying

3    virtually exclusively upon the unchanging facts of his commitment

4    offense. The continued reliance upon the commitment offense is simply

5    arbitrary, particularly in the face of the Boards' acknowledgements

6    of petitioner's model behavior in prison and extensive

7    accomplishments, all of which are conceded by the statement of

8    decision. Therefore, as the court stated in Biggs, denying him a

9    parole date simply because of the nature of the offense, not only

10   raises serious questions involving his liberty interests in parole,

11   but, flatly violates due process. (see Biggs v. Terhune, supra, 334

12   F.3d at 915-916; Irons, supra.).

13   B.    JUDICIAL OVERSIGHT IS CRITICAL TO SAFEGUARD
           THE UNDERLYING PURPOSE OF CALIFORNIA'S
14         PAROLE SYSTEM AND THE LIBERTY INTEREST'S OF
           INMATES.

15         THE ESSENCE OF THE PAROLE SYSTEM IS THE
           RE-ENTRY OF PRISONERS WHO NO LONGER POSE A
16         PUBLIC DANGER.

17   Parole, the release of the imprisoned before they have served

18   the maximum time set by their sentences, has long been part of the

19   California penal system. The Indeterminate Sentencing Law, requiring

20   the trial judge to set a minimum but not a miximum sentence was

21   enacted in 1917. In re Minnis, (1972) 7 Cal.3d 639, 643 n.2 ("the

22   court in imposing the sentence shall not fix the term or duration of

23   the period of imprisonment")(citation and internal quatation

24   omitted). The goal of indeterminate sentences and the California

25   parole system is not only to punish, but, also to provide for

26   reformation and rehabilitation:

27              The belief no longer prevails that every
                offense in a like legal category calls
28              for an identical punishment without
                regard to the past life and habits

-17-

of a particular offender ... retribution
is no longer the dominant objective
of the criminal law. Reformation and
rehabilitation of offenders have become
important goals of criminal jurisprudence.

People v. Morse, (1964) 60 Cal.2d 631, 643 n.8 (quoting Williams v.
State of New York, (1949) 337 U.S. 241, 247). In a lengthy
discussion of this topic, the California Supreme Court stated as
follows:

> [T]he purpose of the indeterminate sentence
> law, like other modern laws in relation
> to the administration of the criminal
> law, is to mitigate the punishment which
> would otherwise be imposed upon the offender.
> These laws place emphasis upon the reforma-
> tion of the offender. They seek to make
> the punishment fit the criminal rather
> than the crime. The endeavor to put before
> the prisoner great incentive to well-doing
> in order that his will to do well should
> be strengthened and confirmed by the habit
> of well-doing.
>
> [...]
>
> [The] interests of society require that
> under prison discipline every effort should
> be made to produce a reformation of the
> prisoner ... The Legislative policy [was
> to provide a system whereby] a hope was
> to be held out to prisoners that through
> good conduct in prison and a disposition
> shown toward reformation, they might be
> permitted a conditional liberty upon
> restraint under which they might be restored
> again to society...
>
> [...]
>
> Although good conduct while incarcerated
> and potential for reform are not the only
> relevant factors, the court has acknowledged
> their significance. Furthermore, the
> authority has declared that these factors
> are among those of "paramount importance."

In re Minnis, Cal.3d at 644-45. The Rosenkrantz court, citing Minnis,
reaffirmed the principles. "[E]ven before factors relevant to parole
decisions had been set forth expressly by statue and by regulations,

-18-

1  we concluded that [a]ny official or Board vested with discretion, is

2  under obligation to consider all relevant factors [citations], and,

3  the [official or Board] cannot, consistently with its obligation,

4  ignore post conviction factors unless directed to do so by

5  Legislature." In re Rosenkrantz, (2002)29 Cal. 4th 616, 656 (quoting

6  Minnis, 7 Cal.3d at 645).

7      C.  PRISONERS HAVE A CONSTITUTIONAL LIBERTY
           INTEREST IN PAROLE DECISIONS.

8      "[P]arole applicants in this California have an expectation that

9  they will be granted parole unless the Board finds, in the exercise

10 of its discretion, that they are unsuitable for parole in light of

11 the circumstances specified by statute and by regulation."

12 Rosenkrantz, 29 Cal. 4th at 659-61 (holding that the California

13 Constitution (Art. V, Section 8(b) and Cal. Penal Code §3041 "give

14 rise to a protected liberty interest" in that, "a prisoner granted

15 parole by the Board has an expectation that the Governor's decision

16 to affirm, modify, or reverse the Board's determination will be based

17 upon the same factors, the Board is required to consider," and, that

18 "this liberty interest underlying a Governor's parole review

19 decisions is protected by due process law.")

20     Federal courts have also unequivically held that California's

21 parole system gives rise to a liberty interest constitutionally

22 protected by due process. (see Board of Pardons v. Allen, (1987) 482

23 U.S. 369, 376-78, Greenholtz v. Inmates of Neb. Penal & Correctional

24 Complex, (1979) 442 U.S. 1, 11-12 (holding a state's statutory parole

25 scheme that uses mandatory language may create a presumption that

26 parole release will be granted upon certain circumstances or

27 findings, thus, giving rise to a constitutionally protected liberty

28 interest); McQuillion v. Duncan, (9th Cir. 2002) 306 F.3d 896, 902-03

-19-

1    n.1, 903 (holding that because California's parole scheme uses

2    mandatory language and is largely parallel to the schemes found in

3    Allen and Greenholtz, to give rise to a protected liberty interest in

4    release on parole, "California's parole scheme gives rise to a

5    cognizable liberty interest in release on parole.") Biggs v. Terhune,

6    (9th Cir. 2003) 334 F.3d 910, 915-916.

7    ///
     ///
8    ///
     ///

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRAYER FOR RELIEF

Petitioner is without remedy save for Habeas Corpus. Accordingly, petitioner requests that the court:

    1.  Issue a Writ of Habeas Corpus granting petitioner's Due Process claim that there was not sufficient evidence to the    decision finding him unsuitable for parole;

    2.  Issue an Order To Show Cause;

    3.  Declare the rights of petitioner;

    4.  Appoint counsel to represent petitioner;

    5.  Issue an Order releasing petitioner based on supporting evidence showing he has exceeded the Matrix pertaining to his commitment offense;

    6.  Grant any and all other relief found necessary or appropriate.

Dated   March 16,           , 2006.

                    Respectfully submitted,

                    *Frank McCormick*

                    Frank McCormick,
                    Petitioner in Pro Se

/// 
/// 
/// 
///

8.  Did you appeal from the conviction, sentence, or commitment?  [XXX] Yes.  [  ] No.  If yes, give the following information:

a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

N/A

b.  Result  Denied                                            c.  Date of decision:  N/A

d.  Case number or citation of opinion, if known.  N/A

e.  Issues raised  (1)  N/A

(2)

(3)

f.  Were you represented by counsel on appeal?  [XXX] Yes.  [  ] No.  If yes, state the attorney's name and address, if known:

Attorney Newhouse

9.  Did you seek review in the California Supreme Court?  [  ] Yes.  [XXX] No.  If yes, give the following information:

a.  Result:                                                    b.  Date of decision:

c.  Case number or citation of opinion, if known:

d.  Issues raised:  (1)

(2)

(3)

10  If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

11.  Administrative Review:

a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review

Board of Prison Terms decision to deny parole to petitioner was made

on 11-14-05 and became final on 03-14-06. (see Exhibit "C", P.71;24-

26). No Administrative remedy exists for claims concerning the

discretionary authority of the BPT as of May 17, 2004.

b.  Did you seek the highest level of administrative review available?  [N/A] Yes.  [  ] No.
    Attach documents that show you have exhausted your administrative remedies.