# EXHIBIT F

McCormick, Frank

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal - Sixth App. Dist.

**FILED**

JAN 1 2 2007

MICHAEL J. YERLY, Clerk

By _____
                    DEPUTY

In re FRANK MCCORMICK,

    on Habeas Corpus.

H031028
(Monterey County
 Super. Ct. No. HC5337)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

    (Bamattre-Manoukian, Acting P.J., Mihara, J., and McAdams, J.,

participated in this decision.)

Dated     JAN 1 2 2007      BAMATTRE-MANOUKIAN, J.    Acting P.J.

MC-275

Name **Frank McCormick**

Address **Correctional Training Facility**

**P.O. Box 689/East Dorm 148-Low**

**Soledad, California 93960-0689**

CDC or ID Number **C-78307**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT
(Court)

| | |
|---|---|
| **Frank McCormick** <br> Petitioner <br><br> vs <br><br> **Ben Curry Warden (A)** <br> Respondent | **PETITION FOR WRIT OF HABEAS CORPUS** <br><br> No _____ <br> *(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, *you should file it in the county in which you are confined.*

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction *for perjury.*

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal

Page one of six

**PETITION FOR WRIT OF HABEAS CORPUS**

**This petition concerns:**

[ ] A conviction      [X] Parole

[ ] A sentence      [ ] Credits

[ ] Jail or prison conditions      [ ] Prison discipline

[X] Other (specify): __Violation of Due Process and Equal Protection__

1. Your name:    **Frank McCormick**

2. Where are you incarcerated? **Correctional Training Facility, Soledad, California**

3. Why are you in custody?   [X] Criminal Conviction    [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

     **Second Degree Murder W/use of a firearm**

b. Penal or other code sections: **Penal Code §187/12022.5**

c. Name and location of sentencing or committing court. **Superior Court of California, County of Monterey, Salinas, California.**

d. Case number:   **MCR 4898**

e. Date convicted or committed:   **11-10-83**

f. Date sentenced:   **12-14-83**

g. Length of sentence:   **15 years to Life**

h. When do you expect to be released?   **Undetermined.**

i. Were you represented by counsel in the trial court?   [X] Yes.   [ ] No. If yes, state the attorney's name and address:

     **John Howell, address unknown**

4. What was the LAST plea you entered? *(check one)*

[X] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief  For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four   For additional grounds, make copies of page four and number the additional grounds in order.)*

**SEE APPENDIX "A"**

_____

_____

_____

_____

a. Supporting facts:
   Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

**SEE APPENDIX "A"**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):
   *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

**SEE APPENDIX "A"**

_____

_____

_____

_____

7. **Ground 2 or Ground _____** (*if applicable*):

**SEE APPENDIX "A"**

a. Supporting facts:

**SEE APPENDIX "A"**

b. Supporting cases, rules, or other authority:    **SEE APPENDIX "A"**

8   Did you appeal from the conviction, sentence, or commitment?   [X] Yes   [ ] No.   If yes, give the following information:
   a.   Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
                                                     **N/A**

   b   Result   **Denied**   c   Date of decision   **N/A**

   @ @@ @@@@ number or citation of opinion, if known:   **N/A**

   e.   Issues raised:   (1)   **N/A**

        (2) _____

        (3) _____

   f.   Were you represented by counsel on appeal?   [X] Yes.   [ ] No.   If yes, state the attorney's name and address, if known:

      **Attorney Newhouse**

9   Did you seek review in the California Supreme Court?   [ ] Yes.   [X] No.   If yes, give the following information:

   a.   Result: _____   b.   Date of decision: _____

   c.   Case number or citation of opinion, if known: _____

   d.   Issues raised:   (1) _____

        (2) _____

        (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   _____

   _____

11  Administrative Review:
   a   If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

      **There is no administrative appeal for BPH hearings.**

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   b.   Did you seek the highest level of administrative review available?   [ ] Yes.   [ ] No.
     *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☐ Yes. If yes, continue with number 13.   ☒ No. If no, skip to number 15.

13. a.  (1) Name of court:    Lines 13 and 14 does not apply.

     (2) Nature of proceeding (for example, "habeas corpus petition"): _____

     (3) Issues raised:  (a) _____

          (b) _____

     (4) Result (Attach order or explain why unavailable): _____

     (5) Date of decision: _____

  b.  (1) Name of court: _____

     (2) Nature of proceeding: _____

     (3) Issues raised:  (a) _____

          (b) _____

     (4) Result (Attach order or explain why unavailable): _____

     (5) Date of decision: _____

  c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)    There is no delay in filing this petition.

_____

_____

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No.  If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No.  If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:    This Court has original jurisdiction in this matter.

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 12-26-06                                  *Frank L. Mc-Cormick*
                                            (SIGNATURE OF PETITIONER)

Frank McCormick
P.O. Box 689/East Dorm 148-Low
Soledad, California 93960-0689
    CDC# C-78307
    In pro se          **APPENDIX "A"**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**
**SIXTH APPELLATE DISTRICT**


| | | |
|---|---|---|
| Frank McCormick    ) | | **Case No.** |
|     Petitioner,    ) | | |
|                 ) | | **Monterey County Superior** |
|       v.         ) | | **Court Case No. HC 5337** |
|                 ) | | |
| [WAS] A.P. KANE    ) | | **PETITION FOR WRIT OF HABEAS** |
| [NOW] Ben Curry (WARDEN)) | | **CORPUS AND MEMORANDUM OF POINTS** |
|                 ) | | **AND AUTHORITIES IN SUPPORT THEREOF** |
|     Respondent.    ) | | |


    TO THE HONORABLE JUDGES OF THE COURT OF APPEAL, OF THE

STATE OF CALIFORNIA, SIXTH APPELLATE DISTRICT;

    In the interest of justice, Petitioner Frank McCormick,

(hereafter Petitioner) respectfully petition this Court for

a writ of habeas corpus to vacate the order of the Superior

Court of Monterey County and the decision of the Board of

Parole Hearings (hereafter Board) denying Petitioner parole

suitability. Petitioner contends, this order (Exhibit A)

and the decision of the Board (Exhibit B) is in violation

of the Due Process Clause and Equal Protection of the Law

as provided for in the statutes enacted by the Legislators

to determine parole suitability for term to life prisoners

1  here in California.

2      The Board has exceptionally broad discretion "to identify

3  and weigh the factors relevant to predicting 'by subjective

4  analysis whether the inmate will be able to live in society

5  without committing additional antisocial acts.'" (In--re

6  DeLuna, (2005) 126 Cal.App. 4th. 585, 591, quoting In--re

7  Rosenkrantz, (2002) 29 Cal. 4th. 616, 655). In reviewing

8  a decision of the Board finding an inmate unsuitable for

9  parole, "the court may inquire only whether some evidence

10 in the record before the Board supports the decision to deny

11 parole, based upon the factors specified by statute and

12 regulations." (Rosenkrantz, supra., at p. 658)  The evidence

13 relied on by the Board however, must have "some indicia of

14 reliability." (In--re--Scott, (2005) 133 Cal.App. 4th. 573,

15 591).

16      In light of the parole consideration hearing held on

17 11-14-05, where Petitioner was denied parole suitability

18 for one year, (See Decision transcript attached as Exhibit

19 B), the transcript of the decision and other relevant

20 documents will show that it is unequivocally clear that the

21 Board did not consider Petitioner's parole suitability in

22 a manner required by Penal Code section 3041±, 3041.2 and

23 the rules and regulations as defined in the California Code

24 of Regulations (hereafter CCR) Title 15, Division 2, Article

25 11, sections 2400 to 2411.  The Board's decision to deny

26 Petitioner parole suitability was arbitrary, capricious and

27 not supported by the evidence reviewed at the hearing.

28      Petitioner contends, he is now illegally confined and

1   restrained from his liberty by Ben Curry, Warden (A) of
2   Correctional Training Facility, Soledad, California, because
3   the Board has in effect converted Petitioner's sentence to
4   the maximum term of Life Without The Possibility of Parole.
5   (See In-re-Rodriquez, 14 Cal. 3rd. 639 (1975) Where the Court
6   held that, "when the Board fails to set a term at a prisoner's
7   parole consideration hearing, the term shall be deemed to
8   have been fixed at its maximum.   Therefore, for these
9   proceedings, Petitioner's term has in effect been fixed at
10  the rest of his natural life, i.e. Life Without The
11  Possibility Of Parole. (LWOP)."
12          By verification, it is alleged that:

                                I

14          On 11-14-05, Petitioner appeared before the Board for
15  his thirteenth (13th.) parole consideration hearing.
16  Petitioner was denied parole suitability for one (1) year.
17  (See Exhibit B, Decision Page 7, line 23.)

                                II

19          CCR, Title 15, Division 2, Article 11, section 2400
20  to section 2411 is the established parole consideration
21  criteria and guidelines for murder committed on or after
22  November 8, 1978. According to the Matrix for Base Terms,
23  §2403 (c), the maximum amount of time a prisoner should serve
24  for second degree murder 21 years and it notes, "Penal Code
25  §189 (in years and does not include post conviction credit
26  as provided in §2410).
27          Petitioner life term began 12-14-83, therefore Petitioner
28  has served twenty-three (23) years of his life term.   Per

                                (3)

1   CCR, Title 15, §2410, "The suggested amount of postconviction
2   credit is zero to 4 months for each year served since the
3   date the life term started excluding any time during which
4   service of the life term is tolled.", which would equal
5   another seven (7) years, eight (8) months of post conviction
6   credits available to Petitioner, for a "Total Life Term"
7   of 31 years, 8 months already served.

III

9       Petitioner's Minimum Eligible Parole Date (MEPD) was
10  5-14-93 and the Board still refuse to set Petitioner's release
11  date "in a manner that provides uniform terms for offenses
12  of similar gravity and magnitude with respect to the threat
13  to the public." (CCR, Title 15, §2401).

IV

15      Petitioner's contentions are;
16      1.   The Board violated State and Federal Due Process
17  Rights when Petitioner's suitability determination was not
18  supported by "some [post-conviction] evidence", and the "some
19  evidence" standards were not correctly applied in this case.
20      2.   The Board's conclusion that Petitioner would now
21  pose an unreasonable risk of danger to public safety were
22  he to be released from prison has no evidentiary support
23  and therefore violates Petitioner's federally protected
24  liberty interest in parole.
25      3.   Petitioner's parole [un]suitability was based on
26  unchanging factors, i.e. the seriousness of the commitment
27  offense, after Petitioner has served a Penal Code §3041 (a),
28  CCR, Title 15, §2404 (c) uniform term equal to the gravity

(4)

1  of his culpability and associationb with the victim, and

2  has marketable skills and viable parole plans.

3      4.   The policies and practices of the Board to deny

4  parole suitability to more than 90% of all appearing inmates

5  over the past ten years does not reflect a constitutional

6  application of Penal Code §3041 (a) and (b), that states,

7  the Board "shall normally" grant parole "unless" the

8  prisoner's release would pose an unreasonable risk of danger

9  to society.  Petitioner contend that such a high percentage

10  of denial of parole across the board which was not the

11  legislative intent when Penal Code section 3041 was originally

12  constructed.

13                          VI

14      Because the Board has failed to exercise its discretion

15  appropriately, Petitioner has no plain, speedy or adequate

16  remedy in the ordinary course of the law.  The issues raised

17  in this petition are of constitutional dimension, questioning

18  the legality of the Board's decision and Petitioner's

19  continued confinement.  Venue is proper as Petitioner was

20  tried, convicted and sentenced in this court's jurisdiction.

21      WHEREFORE, Petitioner pray this Honorable Court;

22      (a)   Issue a writ of habeas corpus, or order the Warden

23  of Correctional Training Facility to inquire into the legality

24  of Petitioner's denial of parole, his continued incarceration,

25  and show cause why this writ should not he granted;

26      (b)   Conduct an evidentiary hearing and after the

27  hearing, if Petitioner is successful, issue an order reversing

28  the Board's decision and direct such further relief as is

1    appropriate under the circumstances.

2        (c)  Order the immediate release of Petitioner.

3

4    Dated: 12-26-06                          Respectfully Submitted

5                                             Frank L. McCoy

6                                                   Petitioner in pro per

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**THE BOARD VIOLATED PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS, AND DEPRIVED HIM OF A FEDERALLY PROTECTED LIBERTY INTEREST WHEN THEY ARBITRARILY AND CAPRICIOUSLY DENIED HIM PAROLE SUITABILITY WITHOUT ANY SUPPORTING EVIDENCE HAVING AN INDICIA OF RELIABILITY THAT PETITIONER'S RELEASE WOULD POSE AN UNREASONABLE RISK OF DANGER TO SOCIETY.**

Under California's parole statutory scheme, the basic method that is suppose to be used to determine an inmate's suitability remains whether "the prisoner will [now] pose an unreasonable risk of danger to society if released from prison." (See Penal Code §3041 (b)) Thus, the burden falls squarely on the Board to prove, or present evidence that Petitioner's release would pose an unreasonable risk of danger or threat to public safety and society. Just saying it doesn't make it so. Petitioner contend, the Board presented no evidence what-so-ever to support their invocation of the exception to the rule, (Penal Code §3041 (b)), and without such proof/evidence, the Board should have set Petitioner's parole date in conformance with the Matrix for Base Terms for murders committed on or after November 8, 1978.

In the Psychological Evaluation for the Board on August 29, 2003, the doctor stated; "A. This inmate has not received any further CDC-115 violations since the last report four years ago. Therefore, it is felt that he would pose a less than average risk for violence when compared to this Level II inmate population. B. If released to the community, his violence potential is estimated to be no higher than

(7)

1  the average citizen in the community." (See Exhibit "C",

2  Page Four, ASSESSMENT OF DANGEROUSNESS:) The Board panel

3  members are not qualified to make a contrary determination

4  of his potential for violence or dangerousness reported by

5  a qualified psychologist, B. Aika, Ph.D. Senior Supervising

6  Psychologist here at Correctional Training Facility, Soledad,

7  a doctor trained and hired to make such assessments.

8      The legislators did not go to such lengths in providing

9  such language as, "One year prior to the inmate's minimum

10 eligible parole release date a panel consisting of at least

11 two commissioners of the Board of Prison Terms shall again

12 meet with the inmate and shall normally set a parole release

13 date as provided in Section 3041.5." only to have the Board

14 ignore the laws that give them the authority to function

15 as a part of the executive branch. Therefore, the panel

16 member's decision that Petitioner would now pose an

17 unreasonable risk of danger to society is without foundation

18 and not based on facts that were presented at the hearing,

19 making their decision arbitrary, capricious and possibly

20 predetermined.

21     Petitioner contend, the Board has violated the

22 foundational precept of due process in order to execute an

23 illegal, underground policy of denying parole suitability

24 to most indeterminate sentenced prisoners, and extracting

25 additional punishment from Petitioner beyond the sentencing

26 laws that were in effect at the time of the crime. Such

27 illegal acts might be politically correct for the times,

28 posturing on the platform of being "tough on crime," but

(8)

the Courts should not sanction these illegal practices.
The Board should be ordered to abide by the laws. In
California, under existing laws, Petitioner should not forever
be banned from parole because of the nature of his offense,
an offense that carries a maximum suggested base term. (See
CCR, Title 15, Division 2, Article 11, section 2403).

CCR, Title 15, Division 2, Article 11 was established
to meet the mandates of P.C. §3041 (a) which states; "The
board **shall** establish criteria for the setting of parole
release dates and in doing so **shall** consider the number of
victims of the crime for which the prisoner was sentenced
and other factors in mitigation or aggravation of the crime."

Penal Code §1170 (a)(1) states in part; "The Legislature
finds and declares that the purpose for imprisonment for
crime is punishment." P.C. §1170 (a)(1) also states; "The
Legislature further finds and declares that the elimination
of disparity and the provisions of uniformity of sentences
can best be achieved by determinate sentences fixed by
statute...." CCR, Title 15, §2400 states in part; "The
prisoner's minimum eligible parole date is established by
statute." §2403 (c) is the Matrix for Base Terms for second
degree murder committed on or after November 8, 1978 and
states; "Penal Code §189 (in years and does not include post
conviction credit as provided in §2410)." The maximum amount
of time suggested for second degree murder is 21 years.

Petitioner's main contention is, the Board speaks in
meaningless generalities and never specify the exact nature
of Petitioner's current character that would make him a danger

1   to society if released form prison. (See Exhibit "B")   For

2   the Board to ignore the Legislative intent to "normally"

3   set inmates parole dates, and continue to deny parole

4   suitability because of the nature of the offense and pre-

5   conviction factors, is a violation of Petitioner's Federally

6   protected liberty interest in parole.

7       "Under the circumstances, the nature of the offense

8   had lost any predictive value and the continued reliance

9   on it to find petitioner unsuitable violates the due process.

10  Accordingly, the court finds that this factor was not

11  supported by some evidence." (See Robert--Everett--Johnson

12  v.-Claude-E.-Finn, No. CIV S-05-0385 DFL GGH P (January 19,

13  2006, Eastern District of California).

14      This case, while resting on state due process (Cal.

15  Const., art. I,§7,subd.(a)), compares favorably to cases

16  affording habeas corpus relief on federal due process grounds,

17  against parole denials for California inmates who had been

18  sentenced to terms of at least 15 years to life for second

19  degree murder.   In one case, the court found due process

20  violation when the former Board of Prison Terms (BPT) denied

21  parole, as it had before, based solely on the gravity of

22  the commitment offense. (Rosenkrantz-v.-Marshall, (C.D.Cal.

23  2006) 444 F.Supp.2d. 1063, 1065, 1070.)   The court reasoned

24  in pertinent part: "While relying upon petitioner's crime

25  as an indicator of his dangerousness may be reasonable for

26  some period of time, in this case, continued reliance on

27  such unchanging circumstances - after nearly two decades

28  of incarceration and half a dozen parole suitability hearings

(10)

1  - violates due process because petitioner's commitment offense
2  has become such an unreliable predictor of his present and
3  future dangerousness that it does not satisfy the 'some
4  evidence' standard. After nearly twenty years of
5  rehabilitation, the ability to predict a prisoner's future
6  dangerousness based simply on the circumstances of his or
7  her crime is nil. [Citation.]" (Id. at p. 1084.)
8  "Furthermore," the court reasoned, "the general unreliability
9  of predicting violence is exacerbated in this case by several
10  facts, including petitioner's young age at the time of the
11  offense, the passage of nearly twenty years since that offense
12  was committed, and the fact that all of the other evidence
13  in the record clearly indicates that petitioner is suitable
14  for parole." (Id. at p. 1085)

15  In a second such case, former Governor Davis had reversed
16  a BPT suitability determination, stressing principally the
17  gravity of the commitment offense. (Martin v. Marshall,
18  431 F.Supp. 2d. at pp. 1040-1042.) After first finding no
19  support for other grounds (id. at pp. 1045-1046), the court
20  turned to the factors surrounding and preceding the offense,
21  which included the 26-year-old petitioner fleeing the scene
22  of his fatally shooting a drug dealer acquaintance and
23  bystander in a blaze of gunfire at a restaurant, wounding
24  yet another bystander, and without seeking medical assistance
25  for any of his victims (ibid.). The court reasoned:
26  "[Petitioner] has surpassed his minimum sentence, and has
27  already been found suitable for parole by two decision-making
28  bodies. [¶]...[T]he court finds that there was no evidence

1   to support the Governor's reversal of petitioner's parole

2   grant. As the [BPT] found, petitioner has not had a

3   significant disciplinary violation since 1995. He has been

4   in prison for approximately twenty-six years and has taken

5   advantage of numerous rehabilitation and enrichment programs.

6   He has exceeded his minimum sentence by approximately six

7   years. Petitioner's supervisor at the Prison Industry

8   Authority shoe factory documented that petitioner demonstrates

9   'exceptional teamwork, attitude, and cooperation with staff

10  and co-workers,' and that petitioner is an 'asset, not easily

11  replaced on short notice, if not impossible.' After four

12  panels denied petitioner a release date, he was granted parole

13  at his fifth hearing. The Governor's sole reliance on 'the

14  circumstance of the offense and conduct prior to the offense'

15  [citation], constitutes a due process violation. The court

16  finds no evidence to support any of the Governor's reasons

17  for denying parole, and therefore finds that the Superior

18  Court's denial of [a] petition for habeas corpus was

19  objectively unreasonable." (Id. at pp. 1047-1048.)

20       A third instructive case is Irons v. Warden of California

21  State Prison - - - Solano, (E.D.Cal. 2005) 358 F.Supp.2d. 936

22  (app. pending sub nom. Irons v. Carey (9th. Cir. 2005) 408

23  F. 3d. 1165, No. 05-15275), where an inmate serving 17 years

24  to life was found suitable for parole at his fifth hearing

25  before the BPT. (Id. at p. 939.) The facts of the offense

26  were, again, in many respects far worse than those in the

27  herein cause. The petitioner in Irons killed a fellow boarder

28  after an argument in which the victim denied stealing from

1   the landlords, as the landlords had claimed. The petitioner

2   loaded a handgun, went to the victim's room, fired 12 rounds

3   into him, said he was going to let him bleed to death and,

4   when the victim complained of the pain, took out a buck knife

5   and stabbed him twice in the back. The petitioner later

6   borrowed a car and drove the body to an isolated coastal

7   location where he released it into the surf. (Id. at pp.

8   940-941.) The BPT had relied exclusively on the facts of

9   the commitment offense and the petitioner's drug use at the

10   time. (Id. at p. 947.) The court wrote: "[Important] in

11   assessing any due process violation is the fact that

12   continuous reliance on unchanging circumstances transforms

13   an offense for which California law provides eligibility

14   for parole into a de facto life imprisonment without the

15   possibility of parole.... The circumstances of the crime

16   will always be what they were, and petitioner's motive for

17   committing them will always be trivial. Petitioner has no

18   hope for ever obtaining parole except perhaps that a panel

19   in the future will arbitrarily hold that the circumstances

20   were not that serious or the motive was more than trivial."

21   (Ibid.)

22   "To a point, it is true," the court observed, "the

23   circumstances of the crime and motivation for it may indicate

24   a petitioner's instability, cruelty, impulsiveness, violent

25   tendencies and the like. However, after fifteen or so years

26   in the caldron of prison life, not exactly an ideal

27   therapeutic environment to say the least, and after repeated

28   demonstrations that despite the recognized hardship of prison,

1  this petitioner does not possess those attributes, the
2  predictive ability of the circumstances of the crime is near
3  zero." (Irons, supra., 358 F. Supp. 2d. at p. 947, fn.2.)

4      The facts of the offense here are older than in any
5  of those three cases and less or only equally aggravating,
6  and if you consider the 13 times Petitioner has appeared
7  before the Board and been denied suitability because of the
8  commitment offense, the denial of due process of law is more
9  damaging. The Petitioner has been incarcerated for 23 actual
10 years.  Second degree murder carries a suggested base term
11 of twenty-one (21) years maximum. (See CCR, Title 15,
12 §2403(c).)  With post-conviction credit available to
13 petitioner, another seven (7) years, eight (8) months,
14 Petitioner has served a "Total Life Term" of 30 years, 8
15 months.  Without committing another act of violence that
16 would prove that Petitioner would pose an unreasonable risk
17 of danger to society, the Board has illegally denied
18 Petitioner parole suitability nine (9) years and eight (8)
19 months past the Maximum suggested Base Term.

20     For the afore mentioned violations, Petitioner pray
21 that this court grant this writ of habeas corpus and order
22 what ever remedy is appropriate under the circumstances.

23 ////        ////        ////        ////        ////
24 ////        ////        ////        ////        ////
25 ////        ////        ////        ////        ////
26 ////        ////        ////        ////        ////
27 ////        ////        ////        ////        ////
28 ////        ////        ////        ////        ////

1  **THE BOARD OF PAROLE HEARINGS DENIED PETITIONER DUE PROCESS AND EQUAL PROTECTION OF THE LAW**
2  **BECAUSE IT HAS DENIED PAROLE BASED ON FACTORS OF THE CRIME WHICH ARE "IMMUTABLE".**

3

4  The Fifth and Fourteenth Amendment of the United States

5  Constitution prohibit the government from depriving an inmate

6  of life, liberty, or property without due process of law.

   In the parole context, a violation of an inmate's due process
7
   occurs when (1) the inmate had been deprived of a
8
   constitutional protected liberty interest in parole, and
9  (2) the inmate has been denied adequate procedural protection

10 in the parole process. (See, e.g., Biggs v. Terhune, 334

11 F. 3d. 910, 913 (9th. Cir. 2003).

12     Under Federal Constitution, there is no cognizable right

13 to parole, but when a state's parole scheme uses mandatory

14 language, the statute "creates a presumption that parole

15 release will be granted" unless certain findings are made,

16 and thereby gives rise to a constitutional protected liberty

17 interest. (Greenholtz v. Inmates of Nebraska Penal &

18 Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.

19 2d. 668 (1979); Board of Pardons v. Allen, 482 U.S. 369,

20 377-78, 107 S.Ct. 2415, 96 L.Ed. 2d. 303 (1987).)

21     California Penal Code §3041 states in part; "[t]he panel

22 or board shall set a release date unless it determines that"

23 statutorily defined determinations are met.    Thus, under

24 Greenholtz and Allen, (clearly established Federal law as

25 determined by the Supreme Court of the United States) the

26 Ninth Circuit Court found "that California's parole scheme

27 gives rise to a cognizable liberty interest in release on

28 parole." (McQuillion v. Duncan, 306 F. 3d. 895, 901 (9th.

1  Cir. 2002).

2       The second prong of the due process inquiry is whether

3  the inmate has been afforded an adequate parole process which

4  is satisfied if two considerations are met. First, the parole

5  procedure itself must provide an inmate with sufficient

6  safeguards.  The inmate must be afforded an opportunity to

7  be heard before an unbiased decision-maker, and in the case

8  of a denial of a parole date, the inmate must be informed

9  of the reasons underlying the decision. (See Jackson_-v._

10 Oregon_Bd._of_Parole, 833 F. 2d. 1389, 1390 (9th. Cir. 1987).

11 Second, "some evidence" must support the decision to grant

12 or deny parole, (adopting the "some evidence" standards

13 established by the Supreme Court in Superintendent_v._Hill,

14 472, U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed. 2d. 356 (1985).

15 The evidence underlying the grant or denial of parole must

16 have "some indicia of reliability."

17      The Ninth Circuit Court has held that California's parole

18 scheme creates a cognizable liberty interest in release on

19 parole because Penal Code §3041 uses mandatory language that

20 is similar to the Nebraska and Montana statutes addressed

21 in Greenholtz and Allen, respectfully. (McQuillion_v._Duncan,

22 306 F. #d. at 901-902.) As the Ninth Circuit has explained,

23 "Section 3041 of the California Penal Code creates in every

24 inmate a cognizable liberty interest in parole which is

25 protected by the procedural safeguards of the Due Process

26 Clause." and that interest arises "upon the incarceration

27 of the inmate." (Biggs_v._Terhune, 334 F. 3d. 910, 914-915

28 (9th. Cir. 2003).)

(16)

In _Biggs_, at 916, the Court also held that the Board's continued use of the crime as a basis for denial of parole violates Federal Due Process, and that the BPT's usage of prior history and unchanging factors as a basis for denial violates Federal Due Process.

While relying upon the nature of Petitioner's crime as an indicator of his dangerousness may be reasonable for some period of time, in this case, continued reliance on such circumstances - after more than 23 years of incarceration and 13 parole suitability hearings violates due process because Petitioner's commitment offense has become such an unreasonable predictor of his present and future dangerousness that it does not satisfy the "some evidence" standards. After 23 years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his crime is nil. (See _Irons_, 358 F. Supp. 2d. at 947. ("To a point, it is true, the circumstances of his or her crime and motive for it may indicate a petitioner's instability, cruelty, impulsiveness, violent tendencies and the like. However, after fifteen or so years in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstration that despite the recognized hardship of prison, this petitioner does not possess those attributes, the predictive ability of the circumstances of the crime is near zero.").

Even California courts have said as much. _Scott_, 133 Cal.App. 4th. at p. 595. ("The commitment offense can negate suitability only if circumstances of the crime reliably

(17)

1    establishes by evidence in the record rationally indicate
2    that the inmate will present an unreasonable public safety
3    risk if released from prison.    Yet, the predictive value
4    of the commitment offense may be very questionable after
5    a long period of time."

6        The length of time Petitioner has already served,
7    combined with his custody credits puts him well beyond the
8    Matrix for Second Degree Murder Committed on or After November
9    8, 1978.    The Board should not be allowed to change a sentence
10   that is set by statute that provides a sentence from 15 to
11   21 years and sentence Petitioner to 25 years to Life, or
12   Life Without The Possibility of Parole. (See CCR, Title 15,
13   §2403(c).)

14       Whether the facts of the crime of conviction, or other
15   unchanged criteria, affects the parole eligibility decision
16   can only be predicated on the "predictive value" of the
17   unchanged circumstances.    Otherwise, if the unchanged
18   circumstances per se can be used to deny parole eligibility,
19   sentencing is taken out of the hands of the judge and totally
20   reposited in the hands of the BPT (Now BPH).    That is, parole
21   eligibility could be indefinitely and forever delayed based
22   on the nature of the crime even though the sentence given
23   set forth the possibility of parole - a sentence given with
24   the facts of the crime fresh in the minds of the judge.
25   While it would not be a constitutional violation to forego
26   parole altogether for certain crimes, what the state cannot
27   constitutionally do is have a sham system, where the judge
28   promised the possibility of parole, but because of the nature

of the crime, the BPT effectively deleted such from the
system. Nor can a parole system, where parole is mandated
to be determined on someone's future potential to harm the
community, constitutionally exist where despite 20 or more
years of prison life which indicates the absence of danger
to the community in the future, the BPT commissioners
revulsion toward the crime itself, or some other unchanged
circumstances, constitutes the alpha and omega of the
decision. Nobody elected the BPT commissioners as sentencing
judges. Rather, in some realistic way, the facts of the
unchanged circumstances must indicate a present danger to
the community if released, and this can only be assessed
not in a vacuum, after four or five eligibility hearings,
but counterpoised against the backdrop of prison events."
(Bair v. Folsom State Prison, 2005 WL 2219220, *12 n. 3
(E.D.Cal. 2005), Report and Recommendation adopted by, 2005
WL 3081634 (E.D.Cal. 2005).

The circumstances of Petitioner's crime do not amount
to some evidence supporting the conclusion that Petitioner
now pose an unreasonable risk of danger if released. "[i]n
the parole context, the requirements of due process are met
if some evidence supports the decision." (Biggs, 334 F.
3d. at 915.) "Some evidence", however does not mean literally
"any" evidence. If it did, the protection afforded by due
process would be meaningless." (See Gerald L. Neuman, The
Constitutional Requirement of "Some Evidence", 25 San Diego
L. Tev. 631, 663-664 (1988) (noting that "[e]vidence that
respondent was alive at the time in question is usually

1 relevant to any charge against her. The [due process]
2 protection of the 'some evidence' requirement demands more
3 than a trivial charade.) In addition, the evidence,
4 underlying the decision must have possess some indicia of
5 reliability." (Biggs, 334 F. 3d. at 914; Caswell, 363 F.
6 3d. at 839; Hill, 472, U.S. at 455-456.) Evidence that lack
7 any real probative value cannot constitute "some evidence".;
8 Cato, 924 F. 2d. at 705 (holding that a hearsay statement
9 attributed to an inmate whose polygraph examination yielded
10 inconclusive results was "not enough evidence to meet the
11 Hill standards.")

12 Without evidence in the record that Petitioner's release
13 would pose an unreasonable risk of danger to society, the
14 Board has no foundation for their decision that Petitioner
15 is unsuitable for parole. Thus, the Board has violated
16 Petitioner's constitutionally protected liberty interest
17 in being released on parole. Because the Board has violated
18 Petitioner's due process of law, this writ of habeas corpus
19 should be granted and a parole date set in conformance with
20 the laws in effect at the time of the crime.

21 ////        ////        ////        ////        ////
22 ////        ////        ////        ////        ////
23 ////        ////        ////        ////        ////
24 ////        ////        ////        ////        ////
25 ////        ////        ////        ////        ////
26 ////        ////        ////        ////        ////
27 ////        ////        ////        ////        ////
28 ////        ////        ////        ////        ////

(20)

## CONCLUSION

This Court has jurisdiction over the issues raised on appeal because the "target" issue is not the State Court judgment or the sentence derived therefrom, but is rather the Board's administrative decision "regarding the execution of his sentence." (Rosas v. Noelson, 428 F. 3d. 1229, 1232 (9th. Cir. 2005).

Petitioner contends, the California Supreme Court has held that Penal Code §3041 parole statute creates a protected "liberty interest" in parole and that "due process" applies at such parole hearings. (See re Rosenkrantz, (2002) 29 Cal. 4th. 616 655-658). Federal Courts have also come to the same conclusion. (See McQuillion v. Duncan, 306 F. 3d. 895, (9th. Cir. 2002); Jancseck v. Oregon Bd. of Parole, 833 F. 2d. 1389 (9th. Cir. 1987); Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442, U.S. 1, 99 S.Ct. 2100, 60 L.Ed. 2d. 668 (1979); Biggs v. Terhune, 334 F. 3d. 910 (9th. Cir. 2003).) This is so because Penal Code §3041 uses mandatory language, ("the panel or board shall normally set a parole date unless it determines further incarceration is necessary in the interest of public safety.") (Also see Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed. 2d. 303 (1987) [Petitioner has] "a presumption that parole release will be granted, unless the statutory defined determination are met.")

In the most recent case of Robert M. Rosenkrantz v. John Marshall, Warden, ---F. Supp. 2d. ---, 2006 WL 2327085 (C.D. Cal. (August 1, 2006), the Court stated; "In the

circumstances of this case, the BPT's continued reliance upon the nature of petitioner's crime to deny parole in 2004 violated due process. First, continued reliance upon the unchanging facts of petitioner's crime makes a sham of California's parole system and amounts to an arbitrary denial of petitioner's liberty interest. Petitioner had been denied parole on six occasions prior to the determination he now challenges. Continued reliance upon the unchanging characterization of petitioner's offense amounts to converting petitioner's sentence of seventeen years to life to a term of life without the possibility of parole."

In <u>Brian Sass v. California Board of Prison Terms</u>, 2006DJDAR 11931 Np. 05-16455, D.C. No. CV-01-00835-MCE (9th. Cir. August 31, 2006) The Honorable Circuit Judge REINHARDT stated in his dissension; "When we assess whether a state parole board's suitability determination is supported by "some evidence" in a habeas case, our analysis is framed by state law. The statute and regulations in a particular state dictates what factors the parole board in that state may consider in deciding whether an inmate is suitable for parole. In other words, the state rules and regulations dictates the nature of the findings that are required before a determination can be made that an inmate is unsuitable for parole. Only evidence that would tend to support such findings constitutes "some evidence." Thus, although federal law establishes the "some evidence" standards, state law tells us of what that evidence may consist, and to what

1   it might pertain. Here as I have explained, the California

2   statute and regulations provide that an offense must be

3   committed in an exceptionally callous or particularly

4   egregious manner for an inmate's offense to justify a

5   determination that he is unsuitable for parole. Also, the

6   inmate must constitute a present danger to society at the

7   time of the suitability hearing. Accordingly, as a habeas

8   court, we must look to whether there is "some evidence"

9   that Sass committed his offense of imprisonment in a manner

10  that distinguishes it from the vast majority of second degree

11  murders, that shows that Sass's offense was more "heinous,

12  atrocious, or cruel" than most other such offenses. We

13  must also look to see that there is some evidence that as

14  of the date of Sass's parole denial he was a present danger

15  to society."

16      California Penal Code section 3041 (a) requires that

17  a parole date "shall normally" be set. For the Board to

18  normally deny parole suitability because of the convicted

19  offense, without any post-conviction evidence that

20  Petitioner's release will now pose an unreasonable risk

21  of danger, or threat to society is a violation of substances

22  due process.

23      Logic would dictate that, if the Penal Code states,

24  "One year prior to the inmate's minimum eligible parole

25  release date a panel consisting of at least two commissioners

26  of the Board of Prison Terms [now, The Board of Parole

27  Hearings] shall meet with the inmate and shall normally

28  set a parole release date as provided in Section 3041.5",

(23)

yet the record reflect that the Board "normally deny" parole release dates to more than 90% of appearing inmates. This fact alone should be cause to examine the Board's mission and direct them in compliance with the statutes that state; "The board shall establish criteria for the setting of parole release dates...."

If the Board is allowed to use the nature of the offense and pre-conviction factors to deny Petitioner parole suitability at his consideration hearing one year prior to his minimum eligible parole release date and every subsequent parole consideration hearing thereafter, the rules and regulations, the penal code and all rulings, from all courts, state and federal are nul and void. If the Board can be allowed to make decisions contrary to the State and Federal Constitution, Petitioner has no rights what-so-ever and the Board has unfettered and absolute power to interject their political views and any underground policies they choose to deny parole suitability to any and all inmates appearing before them.

The Board presented no reliable evidence to support their findings that Petitioner would now pose an unreasonable risk of danger to society and is unsuitable for parole release. As in most hearings, more than 90%, the Board uses the commitment offense as their reason to deny parole suitability. California Code of Regulations, Title 15, Division 2, are the rules and regulations the Board has established to meet the mandates of Penal Code § 3041, yet their nonfeasance in regard to the Parole Consideration

(24)

Criteria and Guidelines has permitted the Board to repeatedly refuse to set Petitioner's release date.   This failure to comply with the mandates of the statutes and the rules and regulations is a violation of the Due Process Clause that guarantee prisoners the right to a fair and impartial hearing.

    For the reasons stated herein, Petitioner pray that this Honorable Court grant this petition for writ of habeas corpus and provide the guidance needed to insure Petitioner's constitutional rights are protected.

Dated: *12·26-06*                          Respectfully Submitted

                                      *Frank A. McCormick*

(25)